997 A.2d 306

**COMMONWEALTH of Pennsylvania, Appellant**

**v.**

**Justin WEIGLE, Appellee.**

Supreme Court of Pennsylvania.

Argued May 12, 2009.

Decided March 24, 2010.

Ellen T. Greenlee, Esq., Karl Baker, Esq., Peter Rosalsky, Esq., Defender Ass'n of Philadelphia, for amicus curiae, Defender Ass'n of Philadelphia.

Peter Carr, Esq., Hugh J. Burns, Jr., Esq., Philadelphia Dist. Attorney's Office, for appellant, Com. of PA.

Fortunato N. Perri, Esq., McMonagle, Perri, McHugh & Mischak, P.C., Philadelphia, Carson B. Morris, Esq., for appellee, Justin Weigle.

BEFORE: CASTILLE, C.J., SAYLOR, EAKIN, BAER, TODD, McCAFFERY and GREENSPAN, JJ.

## *OPINION*

Chief Justice CASTILLE.

The issue before this Court is whether, under Pennsylvania Rule of Criminal Procedure 560(B)(5), the Commonwealth properly may return a criminal information charging robbery where the accused was held for trial on charges of retail theft and aggravated assault, on grounds that robbery is a cognate offense to retail theft. Herein, the accused was originally charged with two counts of robbery, but those charges were dismissed at the preliminary hearing stage, and the Commonwealth failed to pursue an available appeal of that dismissal. Both courts below held that the robbery charges could not be added under these circumstances. The trial court so held on grounds that it lacked authority under the coordinate jurisdiction rule to approve a charging maneuver that sought to overrule the determination of the preliminary hearing judge; and the Superior Court panel majority held largely on grounds that robbery and retail theft are not cognate offenses

for purposes of Rule 560(B)(5). For the reasons set forth below, we affirm.

The Commonwealth presented evidence at the preliminary hearing stage that, on the afternoon of September 27, 2005, a loss prevention officer observed appellee Justin Weigle take a box cutter from his pocket and begin to cut open a computer box in the electronics department of the Franklin Mills Wal-Mart in Philadelphia.[1] The officer alerted store security, which commenced camera surveillance while the officer continued to observe appellee. Appellee opened the box, removed a monitor cord and the software bundle, and then moved to another part of the store, where he opened the software bundle, took some of the items from it, and put them in his pocket along with the cord. Appellee then left the store,[2] followed by the officer and an assistant manager who had been called to be a witness and assist the officer. The officer identified himself to appellee and tried to bring appellee back into the store, but appellee elbowed the officer and a brief struggle ensued. The officer grasped appellee by the right arm and was behind appellee when appellee produced a gun in his left hand and pointed the gun at the assistant manager, who screamed to let the loss prevention officer know that appellee had a gun. The officer let go of appellee's arm, after which appellee pointed the gun around, including at the officer, and fled on foot towards the Franklin Mills shopping mall. The officer called 911 and appellee was apprehended shortly thereafter at the mall. A pat-down search revealed a handgun in appellee's left front pants pocket. The stolen items were found in the mall's parking lot area.

Appellee was charged by two separate criminal complaints with one count each of retail theft, theft, and receiving stolen property; and two counts each of robbery, aggravated assault, simple assault, terroristic threats, recklessly endangering another person ("REAP"), possession of an instrument of crime

1. This factual representation is based upon the evidence presented at appellee's rearrest preliminary hearing on June 8, 2006.

2. The loss prevention officer testified that it is Wal-Mart policy to wait until a theft suspect leaves the store before initiating any confrontation.

("PIC"), and violation of the Uniform Firearms Act ("VUFA").
A preliminary hearing was conducted on December 6, 2005,
before Philadelphia Municipal Court Judge Robert S. Blasi.
The parties stipulated that appellee had a valid license to
carry his firearm and the Commonwealth withdrew the VUFA
charges. At the conclusion of the evidence, appellee moved to
dismiss the robbery charges, without specifying why, and
asked that the remaining charges be remanded. N.T., 12/6/05,
at 18. The Commonwealth argued that all charges should be
bound over, noting that in the course of the theft, appellee had
used force and pointed the gun at both victims before fleeing.
*Id.* Counsel for appellee responded, appearing to argue that
at the time when appellee produced the gun and pointed it at
the complainants, "he's actually outside the store. He's away
from the store." *Id.* at 19. Judge Blasi answered, "I know.
All right." *Id.* Judge Blasi then inexplicably discharged the
robbery charges and remanded the remaining charges, but did
not state expressly why he believed the evidence was insuffi-
cient to establish a *prima facie* case of robbery.

Pursuant to Philadelphia County Local Criminal Rule
500(H),[3] the Commonwealth withdrew the charges, then rear-
rested appellee and re-filed all of the original charges. A
rearrest preliminary hearing was held on June 8, 2006, in the
Court of Common Pleas, before the Honorable Joan A. Brown,
sitting as the Motions Court judge. The Commonwealth again
withdrew the VUFA charges, then presented its case on the
remaining charges. At the conclusion of the evidence, the
parties presented no argument, and Judge Brown announced
that she found a *prima facie* case established as to retail theft,
aggravated assault, simple assault, REAP, and PIC, all of
which were held for trial. N.T., 6/8/06, at 31. Respecting the
robbery charges, Judge Brown announced no findings in open
court. Neither party specifically alerted her to the omission
and the hearing concluded with no further comment. The

3. Rule 500(H) provides: "When an appeal by way of re-arrest is taken
by the Commonwealth, the Judge assigned to the Common Pleas Court
Motion Court shall hold the Preliminary Arraignment. The Preliminary
Hearing shall likewise be scheduled in the Common Pleas Court Motion
Court."

docket entry for the proceeding, however, indicates that the robbery charges were dismissed,[4] but provides no indication or explanation of Judge Brown's reasoning.

■ Because the June 8, 2006 proceeding was a rearrest preliminary hearing in Philadelphia County, the Commonwealth could have appealed the dismissal of the robbery charges, but it did not do so.[5] Instead, on June 16, 2006, the Commonwealth proceeded to file criminal informations against appellee, which included both the charges that had been held for court **and** the dismissed robbery charges. On July 5, 2006, appellee filed a motion to quash the informations charging robbery because those charges had been dismissed at the rearrest preliminary hearing.

The Honorable Pamela Pryor Dembe heard argument on the quashal motion on December 19, 2006. Appellee renewed his argument that the robbery informations were improperly filed because those same charges had been dismissed. The Commonwealth responded that "nothing in the case law doesn't allow us from putting through bills of information on a cognate offense." The Commonwealth added that, in its view, the notes from the preliminary hearing established the robbery charges: "When he left the scene after steeling [sic] various parts from the computer, he put a gun in the manager's face and then waived [sic] a gun at the crowd. Clearly, that's a robbery, so there is no issue that we made out the

4. The charges of terroristic threats, receiving stolen property, and unlawful taking were also dismissed.

5. The general rule in Pennsylvania is that "[a] finding by a committing magistrate that the Commonwealth has failed to establish a *prima facie* case is not [an appealable] final determination, such as an acquittal, and only entitles the accused to his liberty for the present, leaving him subject to rearrest." *Commonwealth v. Hetherington*, 460 Pa. 17, 331 A.2d 205, 208 (1975). However, under Philadelphia County Local Criminal Rule 500(H), Common Pleas Motions Court judges' orders discharging an accused or denying a rearrest petition constitute final orders subject to appellate review. In *Commonwealth v. Prado*, 481 Pa. 485, 393 A.2d 8, 10 (1978), this Court noted the policy embodied in Rule 500(H) as "prevention of abuse of the power to rearrest and avoidance of 'judge shopping.'" As a result, "the *Hetherington* approach of 'seeking a review by another judicial officer' is not available in Philadelphia." *Id.*

charges." The Commonwealth cited *Commonwealth ex rel. Tanner v. Ashe,* 365 Pa. 419, 76 A.2d 210 (1950), in support of its argument that the bills could include robbery as a cognate offense.[6] At the conclusion of argument, Judge Dembe dismissed the robbery charges, without elaboration. N.T., 12/19/06, at 4–5, 8.

■ The Commonwealth appealed to the Superior Court, asserting that Judge Dembe's order substantially handicapped the prosecution. *See* Pa.R.A.P. 311(d). Judge Dembe filed an opinion in support of her order on February 7, 2007, in which she rejected the Commonwealth's reliance on *Tanner,* reasoning as follows:

> *Tanner* does not apply ... because it has a different factual pattern, and applied a different rule of law. In *Tanner,* the Commonwealth was permitted to amend an indictment to include additional offenses arising from the facts of the criminal episode. In the instant case, the Commonwealth attempted to reinstate charges that had previously been dismissed by another judge of the Court of Common Pleas.

Trial Ct. Op., 2/7/07, at 2. Judge Dembe noted that the Commonwealth did not forward any additional facts or relevant case law to justify adding charges in this circumstance. Moreover, Judge Dembe was disinclined to revisit the merits and overrule Judge Brown's dismissal of the robbery charges, citing the coordinate jurisdiction doctrine.[7]

The Superior Court affirmed in a published panel opinion by Judge (now Justice) Joan Orie Melvin, over a dissent by Judge Correale F. Stevens. *Commonwealth v. Weigle,* 949 A.2d 899 (Pa.Super.2008). The panel majority first rejected the Commonwealth's argument that the robbery charges should be

6. In *Tanner,* this Court quoted an earlier case for the proposition that "when a prosecuting officer is satisfied from his investigations that a higher grade of offense, cognate to the one returned by the committing magistrate, is properly chargeable against a defendant, he may draw the bill accordingly." 76 A.2d at 211 (quoting *Maginnis's Case,* 269 Pa. 186, 112 A. 555, 558 (1921)) (emphasis removed).

7. Judges of coordinate jurisdiction sitting in the same case ordinarily should not overrule each other's decisions. *Commonwealth v. Chmiel,* 585 Pa. 547, 889 A.2d 501, 522 n. 16 (2005).

deemed cognate to the charges held over because the same facts and circumstances that proved the charges held over also proved robbery. The panel majority characterized this argument as circular, since it turned upon the Commonwealth's belief that it had proved a *prima facie* case of robbery at the preliminary hearing, when in fact the robbery charges were not bound over, and the Commonwealth's failure to appeal made that determination final. "Furthermore," the majority noted, "if we accept the Commonwealth's argument we would render the preliminary hearing meaningless as the Commonwealth would have free reign to ignore the issuing authority's determination as to a *prima facie* case and simply re-file the original charges by way of the criminal information." 949 A.2d at 903.

The panel majority further concluded that on the merits of the cognate offense query, robbery and retail theft are separate, discrete, non-cognate offenses and that Judge Dembe properly held that the Commonwealth could not charge appellee anew with robbery after those charges had been dismissed. Although the panel majority observed that "robbery clearly requires, as one of its elements, proof of a theft," it also stated that "robbery and retail theft, or any theft for that matter, are not of the same class or category of offenses [so as] to be considered cognate." *Id.* at 907.

> Robbery bears only a secondary relationship to theft but is principally directed at protection of the person. . . . Whatever distant association the two offenses may have through their relationship to property crimes is simply too tenuous to allow us to conclude that they share sufficient similar elements and are of the same class or character to be considered cognate offenses.

\* \* \* \*

[R]obbery is a non-cognate offense to [theft] because it does not serve a common purpose of protecting the same societal interest ... as was the case with murder and manslaughter in [*Tanner, supra*] and robbery and attempted robbery in

*Epps.*[8] Further, [robbery] cannot be said to be "similar in nature and spring[ing] from a common concern" [as theft] as was the case in [*Slingerland*].[9]

*Id.* at 907–08 (citation omitted).

In dissent, Judge Stevens addressed only the cognate offense issue and not the procedural posture of the Commonwealth's claim. The dissent would have found that robbery was cognate to retail theft and that *Tanner* authorized the Commonwealth to add the robbery charges at the criminal information stage. Quoting this Court's opinion in *Commonwealth v. Sims*, 591 Pa. 506, 919 A.2d 931, 938 (2007), the dissent opined: "In determining whether offenses are cognate, there is 'no requirement that the greater offense encompass all of the elements of the lesser offense. Rather, it is sufficient that the two offenses have certain elements in common.'" *Weigle*, 949 A.2d at 909 (Stevens, J., dissenting).[10] The dissent noted that on the facts alleged here, "the acts supporting a charge of robbery occurred during [a]ppellee's flight after the commission of the retail theft." *Id.* at 910. In the dissent's view, the interrelationship of the retail theft and the robbery made them cognate: the retail theft was complete when appellee left the store with the merchandise and the elements of robbery arose when he elbowed the loss preven-

8. In *Commonwealth v. Epps*, 260 Pa.Super. 57, 393 A.2d 1010, 1011 (1978), the Superior Court concluded: "[I]t is clear that the crime charged in the indictment, robbery, was cognate to, and indeed identical with the charge imposed at the preliminary hearing, attempted robbery."

9. In *Commonwealth v. Slingerland*, 358 Pa.Super. 531, 518 A.2d 266, 268 (1986), disapproved on other grounds in *Commonwealth v. McCurdy*, 558 Pa. 65, 735 A.2d 681, 686 n. 5 (1999), the Superior Court concluded that two subsections of the former statute governing driving under the influence (driving while incapable of safe driving and driving with a blood alcohol content over 0.10%) were cognate because they "are similar in nature and spring from a common concern."

10. In *Sims*, this Court held that a defendant may be convicted of an attempt crime even if he was only charged with the corresponding substantive offense because the attempt crime is a necessarily lesser-included offense of the substantive crime. *Sims* focused on various methods for determining lesser-included offenses.

tion agent and pointed a gun at the assistant store manager's face when they confronted him just outside the store.

■ After the Superior Court denied reargument, this Court granted the Commonwealth's petition for allowance of appeal. The question posed by the Commonwealth focuses solely on whether robbery and retail theft are cognate offenses; the Commonwealth's assumption is that the answer is yes and that Rule 560(B)(5) authorizes it to re-charge appellee with robbery via criminal information. However, there is a necessary procedural and supervisory aspect of this matter beyond the Commonwealth's interest in the definitional or philosophical question of what makes offenses cognate: whether and when the Commonwealth may invoke Rule 560(B)(5) as a self-help remedy in the face of a specific, adverse ruling by a judicial officer at a rearrest preliminary hearing, which the Commonwealth elected not to appeal. This procedural circumstance, and not the philosophical/definitional issue of interest to the Commonwealth, was the specific basis for Judge Dembe's ruling, and the question of the propriety of adding cognate offenses under Rule 560(B)(5) cannot properly be answered without accounting for that circumstance. Both the procedural and the substantive issue are questions of law and, as such, our scope of review is plenary and our standard of review is *de novo*. *Stilp v. Commonwealth*, 588 Pa. 539, 905 A.2d 918, 930 (2006).

■ As Justice James T. McDermott noted for the Court in *Commonwealth v. McBride*, 528 Pa. 153, 595 A.2d 589 (1991):

The basic principles of law with respect to the purpose of a preliminary hearing are well established. The preliminary hearing is not a trial. The principal function of a preliminary hearing is to protect an individual's right against an unlawful arrest and detention.... At this hearing the Commonwealth bears the burden of establishing at least a *prima facie* case that a crime has been committed and that the accused is probably the one who committed it.

*Id.* at 591 (citations omitted). *See also Commonwealth v. Karetny,* 583 Pa. 514, 880 A.2d 505, 513 (2005). A *prima facie* case exists "when the Commonwealth produces evidence of each of the material elements of the crime charged and establishes probable cause to warrant the belief that the accused committed the offense. Furthermore, the evidence need only be such that, if presented at trial and accepted as true, the judge would be warranted in permitting the case to be decided by the jury." *Karetny,* 880 A.2d at 514 (citations omitted). An offense on which the Commonwealth has met its burden will be "held over" for trial and may be included in the Commonwealth's criminal information, which is a "formal written accusation of an offense made by the attorney for the Commonwealth, upon which a defendant may be tried, which replaces the indictment in all counties since the use of the indicting grand jury has been abolished." Pa.R.Crim.P. 103. Rule 560 governs the "filing, contents and function" of the criminal information, which is "valid and sufficient" if, among other things, it contains "a plain and concise statement of the essential elements of the offense substantially the same as or cognate to the offense alleged in the complaint." Pa. R.Crim.P. 560(B)(5). Notably, Rule 560 does not define the term "cognate offense."

The Commonwealth argues that robbery and retail theft are cognate offenses and that the Commonwealth may include one offense in a bill of information where the other has been held over because they have a greater-and lesser-included offense relationship and also because the statutes criminalizing them share at least one common purpose, the protection of property. The Commonwealth quotes *Slingerland's* dictionary definition of "cognate" as "related, akin or similar esp. in having the same or common or similar nature, elements, qualities or origin." In the Commonwealth's estimation, one offense is cognate to another if it contains substantially similar elements and arises from the same set of circumstances, even if it has a higher grade or a more severe penalty. The Commonwealth posits that since the elements of retail theft are not merely

related to those of robbery, but are wholly subsumed in them, the two are cognate.

With respect to the Superior Court's conclusion that robbery and theft are not of the same class or category because the statute criminalizing robbery is principally directed at protection of the person, the Commonwealth stresses that the robbery statute is codified in Chapter 37 ("Robbery") in Article C of the Crimes Code, which is titled "Offenses Against Property." [11] The Commonwealth posits that this categorization is consistent with the historical common law understanding of robbery as an aggravated or compound form of theft. Commonwealth's Brief at 11 (citing JOEL PRENTISS BISHOP, COMMENTARIES ON THE CRIMINAL LAW 645 (1877), EDWARD HYDE EAST, PLEAS OF THE CROWN 707 (1803), and WILLIAM HAWKINS, PLEAS OF THE CROWN 95 (1716–1721)). According to the Commonwealth, the purpose of the robbery statute is to protect both persons **and** property: "It cannot be that compound crimes such as robbery have no cognate offenses merely because they are designed to protect against multiple harms. If anything, the opposite is true: robbery is cognate to both theft offenses and assaultive offenses." Commonwealth's Brief at 11–12.

The Commonwealth argues that the purpose of the cognate offense restriction is merely to ensure that a defendant has adequate notice of the nature of the crimes against which he will have to defend. The Commonwealth posits that notice existed here because all of the elements of robbery are encompassed in retail theft and aggravated assault, both of which the Commonwealth established by a *prima facie* showing at the preliminary hearing phase. Finally, the Commonwealth contends that the lower courts' dispositions conflict with *Sims, supra.*

Appellee, who did not file a brief in the Superior Court, has filed one here, and he largely echoes the reasoning of the

11. The other chapters in Article C are: Chapter 33. Arson, Criminal Mischief and other Property Destruction; Chapter 35. Burglary and other Criminal Intrusion; Chapter 39. Theft and Related Offenses; and Chapter 41. Forgery and Fraudulent Practices.

panel majority below. Appellee concedes that robbery and retail theft share the requirement of proof of theft, but he submits that, other than that "lone commonality," they are principally directed at different concerns: robbery statutes aim to protect the person while theft statutes aim to protect property. Appellee contends that *Sims* is inapposite because it was solely concerned with lesser-included offenses, specifically whether a defendant can be convicted at trial of an inchoate attempt crime after being charged only with the corresponding substantive offense. Appellee adds that under *Sims*, consideration of when a lesser-included offense may be cognate to a greater offense is limited to: (1) when a defendant is convicted of a crime that was not charged; (2) when the issue is whether two crimes merge for sentencing purposes; and (3) the double jeopardy context. None of those circumstances is present here, appellee contends, so the mere fact that retail theft is a lesser-included offense of robbery does not make the two offenses cognate and therefore there is no tension with *Sims*.

By appellee's account, a holding favoring the Commonwealth will unfairly burden the accused by forcing him to defend against greater charges, like robbery, that the Commonwealth could add to lesser charges, like retail theft, without having to present any preliminary evidence that the defendant employed or threatened physical violence against the victim. Appellee dismisses the Commonwealth's assertion that the purpose of the cognate offense restriction is merely to ensure adequate notice. If that were so, appellee notes, the Commonwealth could add any charge to an information after the preliminary hearing so long as it is done with sufficient notice. Appellee contends that the issue is not adequate notice, but the very legitimacy of the robbery charge because Rule 560(B)(5)'s true purpose is to protect defendants against having to answer charges different from and unrelated to those that survive the preliminary hearing phase of prosecution.

Appellee asks this Court to hold that charges may be added to an information under the cognate offense provision of Rule

560 only if they are legitimately lesser-included offenses of charges held over for trial following a preliminary hearing. Appellee recognizes that to adopt this rule, this Court would have to address *Tanner*'s statement that "when a prosecuting officer is satisfied from his investigations that a higher grade of offense, cognate to the one returned by the committing magistrate, is properly chargeable against a defendant, he may draw the bill accordingly." Nevertheless, appellee contends, his approach would bring Pennsylvania in line with the proper definition of a cognate offense as set forth in *Black's Law Dictionary*, which defines a "cognate offense" as: "A lesser offense that is related to the greater offense because it shares several of the elements of the greater offense and is of the same class or category." BLACK'S LAW DICTIONARY 1111 (8th ed. 2004). Appellee asserts that a lesser-included offense approach would also square with *Commonwealth v. Williams*, 521 Pa. 556, 559 A.2d 25 (1989), where this Court held that the focus of inquiries into whether crimes merge for sentencing purposes should be on whether one crime is a lesser-included offense of the other and not on more nebulous questions like the Commonwealth's interest in prosecuting qualitatively different offenses or protecting society against one ill or another.[12]

In a reply brief, the Commonwealth argues that because there is no constitutional impediment or mandate of an exclusive course of events by which an accused is informed of the charges against him, the Commonwealth is not precluded from following Rule-based mechanisms for adding additional charges after the preliminary hearing stage, as it unilaterally

12. In *Commonwealth v. Baldwin*, 985 A.2d 830 (Pa.2009), this Court recently addressed sentencing merger under 42 Pa.C.S. § 9765 in the context of convictions under both 18 Pa.C.S. § 6106, carrying a firearm without a license, and 18 Pa.C.S. § 6108, carrying a firearm on the public streets or public property of Philadelphia. In concluding that the offenses do not merge, we held that courts are precluded "from merging sentences for two offenses that are based on a single criminal act unless all of the statutory elements of one of the offenses are included in the statutory elements of the other. Because the offenses of which [the defendant] was convicted in this case each contain an element the other does not, merger would not have been proper here." *Id.* at 837.

did here. The Commonwealth further argues that *Black's Law Dictionary* does not define legal terms in Pennsylvania and that appellee's reading of Rule 560(B)(5) overlooks the presence of the disjunctive "or" in the phrase: "the offense substantially the same as **or** cognate to the offense alleged in the complaint." The Commonwealth posits that "[c]onsidered in the light of the ordinary disjunctive meaning of the word 'or,' the phrase 'substantially the same as' does not **define** the term 'cognate'; rather, it sets forth an alternative class of additional offenses that, like cognate offenses, may be included in a bill of information." Commonwealth's Reply Brief at 3. The Commonwealth adds that even if appellee's argument that Rule 560(B)(5) protects defendants from having to answer charges unrelated to those that survive the preliminary hearing stage is valid, the addition of robbery to the information here met that standard. Finally, the Commonwealth argues that appellee's proposed construction limiting cognate offenses to lesser-included offenses would force the Commonwealth to rearrest defendants after greater offenses are dismissed, the result of which would be yet more inefficiency and backlog.

The Defender Association of Philadelphia has submitted an *amicus curiae* brief in support of appellee. The Association warns that if the Commonwealth is permitted to charge robbery in an information even if only retail theft is held over after a preliminary hearing, the lesser theft offense would become the "tail that wags the dog." The Association suggests that such laxity would invite prosecutorial gamesmanship and manipulation to escalate charges that would not survive a preliminary hearing and would allow prosecutors to effectively override judicial determinations. The Association submits that, "[i]f the Commonwealth is unable to shoulder the relatively light burden of establishing a *prima facie* case, the accused should not be put to the ordeal of defending against it at trial." *Amicus* Brief at 5-7.

The Association also argues that there is a qualitative difference between lesser and greater offenses, which are not interchangeable. The Association argues that a lesser offense may be added at the information stage under the cognate

offense provision so that a defendant will be aware of what offenses may be "in play," but permitting the same exception for a **greater** offense wrongly expands the accused's potential exposure while permitting the Commonwealth to bypass its burden at the preliminary hearing phase. *Amicus* Brief at 9. Defendants faced with defending against greater charges added after the preliminary hearing stage may plead guilty to offenses that they might not be found guilty of at trial, giving the Commonwealth an unfair degree of leverage in plea negotiations.

The Association interprets Rule 560(B)(5) to allow inclusion on an information of "offenses **not** alleged in the complaint that are substantially the same [as] or cognate to those offenses that are alleged in the complaint." *Amicus* Brief at 11. Here, however, robbery **was** alleged in the complaint and those charges were discharged for lack of a *prima facie* case not once, but twice. Thus, the Association urges, Rule 560 does not even apply here. Further, the Association argues that allowing inclusion of a greater offense in the information under Rule 560 would run afoul of Rule 564, which prohibits amending an information to include "an additional or different offense."

In our view, the proper disposition of this appeal does not turn on the pure definition or understanding of cognate offenses in general, nor does it turn on the question, well-briefed here, of what sorts of offenses, or relationships between offenses, should be deemed embraced by Rule 560(B)(5)'s cognate offense limitation on bills of information. The case *sub judice* does not present a circumstance where the offense alleged to be cognate was never charged, which can occur through oversight, the relatively compressed time-frame in which complaints are drafted, or because further investigation or developments revealed a related charge that was not included in the original complaint. Instead, here, the robberies alleged to be "cognate" were actually charged not once, but twice. Two preliminary hearings—judicial proceedings designed, as described in *McBride, supra,* "to protect an individual's right against an unlawful arrest and detention"—

were held (the second serving as a second chance for the Commonwealth to prove or perfect its *prima facie* case); two separate judicial officers determined that the robbery charges were not sustained; and the Commonwealth, which had a right to appeal the final adverse determination by the Court of Common Pleas, elected not to do so. The robbery charges here were not "cognate" to the other offenses alleged in the complaint: they were part of that complaint; they were subject to specific judicial dispute; they were dismissed by judicial officers for an adjudged lack of evidence; and the Commonwealth failed to appeal the final order of dismissal.

Rule 560(B)(5) obviously was not adopted or intended to serve as a prosecutorial avoidance of an adverse preliminary hearing decision involving charges that were **actually forwarded** in a criminal complaint, only to be dismissed by a judicial officer for want of a *prima facie* case. To hold otherwise would defeat the purpose of the preliminary hearing procedure and make the Commonwealth, in essence, the sole architect and arbiter of a predetermined "appeal" that would substitute for the appeal it could have pursued, but did not.

There is simply no avoiding the fact that resort to Rule 560(B)(5) in a circumstance like this one serves as an improper collateral attack upon a judicial determination. The sole, and intended, effect of the Commonwealth's action is to overturn the unappealed preliminary hearing determination. Judge Dembe obviously appreciated the fact that the Commonwealth's action amounted to a collateral attack upon the determination of a judge of equal jurisdiction; thus, she invoked the coordinate jurisdiction rule. Furthermore, the Commonwealth itself was candid at the hearing before Judge Dembe: it believed that the preliminary hearing officers were simply mistaken in their legal assessment of the Commonwealth's case for robbery. *See* N.T., 12/19/06, at 5 ("Clearly, that's a robbery, so there is no issue that we made out the charges."). But, as Judge Dembe also recognized, whether those judges were correct in their legal assessment of the robbery charges was not properly before her. And, we conclude, dissatisfaction with those rulings is not a proper basis to

invoke Rule 560(B)(5) in order to unilaterally reinstate judicially-dismissed charges under the guise of the cognate offense provision.

For several reasons, the *Tanner* case and the authorities it cites do not control this analysis or counsel a different conclusion. First, and certainly not least, Rule 560 did not exist in 1950 when *Tanner* was decided,[13] nor did preliminary hearings play the same role in 1950 that they play today. Indeed, *Tanner* involved not a preliminary hearing, but a coroner's inquest into the shooting death of the victim. The coroner recommended that the defendant be held for the grand jury upon a charge of manslaughter. When preparing the information, however, the district attorney charged the defendant with both murder and manslaughter. The grand jury then indicted the defendant on both charges and the defendant was ultimately convicted of first-degree murder. The defendant argued on appeal that "he had been indicted and tried for the commission of a crime different from that for which he had been held to await the action of the grand jury." 76 A.2d at 211. This Court affirmed the conviction, noting: "[W]hen 'a prosecuting officer is satisfied from his investigations that a higher grade of offense, cognate to the one returned by the committing magistrate, is properly chargeable against a defendant, he may draw the bill accordingly.'" 76 A.2d at 211 (quoting *Maginnis's Case*, 269 Pa. 186, 112 A. 555, 558 (1921)).

As Judge Dembe correctly pointed out, different functions and values are at stake in this case than were presented in *Tanner*. A coroner's inquest, now largely anachronous, is an inquiry by a coroner or medical examiner, sometimes with the aid of a jury, into a victim's cause of death. BLACK'S LAW DICTIONARY 808 (8th ed. 2004). Unlike a modern-day preliminary hearing before a judicial officer, a coroner's conclusions in *Tanner* and its times were "merely advisory" to law enforcement and prosecution authorities. *Tanner*, 76 A.2d at 212. The coroner's recommendations bore far less weight

---

**13.** Rule 560 is the descendant of prior Rule 225, which was adopted in 1974 and renumbered as Rule 560 in 2000. *See* note to Pa.R.Crim.P. 560.

than the subsequent conclusions of the district attorney and grand jury, who were relatively free to accept the coroner's recommendations or go beyond them, depending on how the facts evolved and developed, as occurred in *Tanner*. Today, however, magistrates and trial judges are tasked with the work of determining whether charges are properly supported by *prima facie* evidence at the preliminary hearing (or rearrest preliminary hearing) stage. These are judicial officers whose conclusions are to be viewed with deference and respect, both by judges of coordinate jurisdiction and on appeal. This is particularly so where, as here, there is a recognized and specific avenue of appellate recourse from a final, adverse decision at a preliminary hearing.

Judge Dembe recognized as much, and her ruling was correct; we therefore need go no further to properly decide this appeal. We offer no view on whether robbery and retail theft are cognate offenses generally. However, we do recognize that elucidation of the proper scope of the cognate offense restriction in Rule 560(B)(5) would be helpful to the bench and bar. The question of the proper role of Rule 560(B)(5), including the proper definition of "cognate offense," requires consideration of the interplay of practice and policy, therefore, referral is particularly appropriate. To that end, we will refer this matter to the Criminal Procedural Rules Committee. We have set forth the parties' comprehensive presentations here, including the presentation of *amicus*, the Defender Association of Philadelphia, to assist the Committee in its consideration.

The decision of the Superior Court is affirmed.

Former Justice GREENSPAN did not participate in the decision of this case.

Justices SAYLOR, BAER and TODD join the opinion.

Justice EAKIN files a dissenting opinion in which Justice McCAFFERY joins.

Justice EAKIN, dissenting.

The majority rules upon a worthwhile issue, and I do not necessarily disagree with the principle pronounced. However, we granted allocatur on a discrete issue, namely "whether the Superior Court erred in holding that robbery and retail theft are not cognate offenses, and that, consequently, where only retail theft and assault have been alleged, the Commonwealth cannot add a robbery charge?" *Commonwealth v. Weigle,* 600 Pa. 100, 963 A.2d 903, 904 (2008). The majority does not answer this question, but instead holds a count dismissed by a judicial officer cannot be reincarnated by means of Rule 560. The majority leaves the issue on which we granted review to the Rules Committee. *See* Majority Op., at 249, 997 A.2d at 315, 316.

I cannot agree with this result for two reasons. First, the issue deemed dispositive was never raised by a party; the Superior Court consequently does not mention it, and this issue is resurrected *sua sponte* by the majority. Though Judge Dembe relied on the coordinate jurisdiction rule, the original ruling dealt with cognate offenses, and the appeal taken reflected only the cognate offense issue. Errors in procedural matters, such as how something came to be charged, must be raised by the party affected, not by an appellate court. If the party fails to raise the issue, it is waived. In the present case, this issue has not been heretofore raised.

Secondly, this court has heard no advocacy on the point deemed dispositive—if we are to make a pronouncement on the point, we should do so only after contemplating all sides of it, which sides were understandably not presented to us by either party. For example, we should consider: (1) whether this case is distinct because Philadelphia Municipal Court rules are distinct from non-Philadelphia Magisterial District Court procedures; (2) whether the conclusion that the district attorney cannot add a count if it has been charged and dismissed, but *can* add a charge if it was never filed in the first place comports with the goal and plain language of Rule 560(B)(5), which clearly states the Commonwealth may add a cognate offense; (3) whether well-settled waiver rules trump

our consideration of an issue for which we did not grant allocatur, and which was never raised by a party. Also murky is the question whether a ruling on the robbery in the second filing ever took place—no ruling was apparently made in court, though the record was subsequently found to contain a marking of "dismissed" on the docket.

Again, we granted allocatur to address whether robbery and retail theft are cognate offenses. Distinct and unchallenged procedural concerns that have not been fully and comprehensively presented to us are only addressed at this point with the understanding that errors may be made for want of consideration of points we have not contemplated. Thus, while I do not necessarily disagree with what my esteemed colleagues write, I cannot offer my joinder to it at this time.

Justice McCAFFERY joins this dissenting opinion.