J-A10035-20

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellant | : | |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| JORGE FRETTS | : | No. 2443 EDA 2019 |
| | : | |
| Appellee | : | |

Appeal from the Order Entered August 14, 2019
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s):  CP-51-CR-0002763-2019

BEFORE:  BOWES, J., SHOGAN, J., and PELLEGRINI, J.[*]

MEMORANDUM BY PELLEGRINI, J.:                **FILED AUGUST 14, 2020**

The Commonwealth appeals from the order of the Court of Common Pleas of Philadelphia County (trial court) granting a pretrial motion to quash and dismiss charges of homicide by vehicle, involuntary manslaughter and recklessly endangering another person against Jorge Fretts (Fretts).  After review, we reverse and remand for further proceedings.

On November 28, 2017, Fretts was driving a garbage truck when he struck and killed Emily Fredericks (Fredericks) while she was riding a bicycle. The collision occurred at the intersection of Spruce and 11th Streets in Center City Philadelphia.  Just before the collision, Fretts and Fredericks were

_____

[*] Retired Senior Judge assigned to the Superior Court.

traveling beside each other on Spruce Street, which is a one-way street with a bike lane on the right-hand side. About 125 feet before the intersection, the bike lane becomes a right-turn lane that motorists must yield to cyclists. Unaware that someone was to his right in the bike lane, Fretts made a right turn onto 11th Street and into the path of Fredericks, knocking her to the ground and running her over with the truck's wheels resulting in her death.

During their investigation, the Commonwealth obtained two videos related to the collision. The first was from the intersection and showed the actual collision. According to the Commonwealth, the video shows that Fretts did not use his turn signal before turning. The other video was from inside the cab of the truck. Among other things, the Commonwealth believes that the video shows Fretts shuffling through papers in the center console just before turning his truck. Based in large part on these videos, the Commonwealth charged Fretts with homicide by vehicle, involuntary manslaughter and recklessly endangering another person.[1]

At the April 17, 2019 preliminary hearing, Fretts stipulated to the two videos. After marking both videos for identification as C-2 and C-3, the Commonwealth showed them several times during its direction of its sole witness, an Accident Investigation District (AID) officer. Similarly, Fretts replayed them multiple times during his cross-examination of the officer.

---

[1] 75 Pa.C.S. § 3732(a), 18 Pa.C.S. §§ 2504(a) and 2705, respectively.

Despite marking the videos for identification, the Commonwealth never admitted them into evidence. At the conclusion of the hearing, all charges were held for court.

After being bound over for court, Fretts filed a motion to quash the return of transcript claiming the Commonwealth failed to make out a *prima facie* case at the preliminary hearing.[2] As part of his motion, Fretts submitted a USB drive containing multiple videos and photographs but not the two videos shown at the preliminary hearing. At the August 14, 2019 hearing on the motion, the Commonwealth did not show the videos or enter them into evidence for the trial court to view. At the conclusion of the hearing, the trial court granted the motion and dismissed all charges without ever viewing the videos. On August 23, 2019, the Commonwealth filed a notice of appeal certifying that the trial court's order substantially handicapped its prosecution under Pa.R.A.P 311.[3]

---

[2] "A defendant may challenge the sufficiency of the evidence presented by the Commonwealth at the preliminary hearing by filing a motion for Writ of *Habeas Corpus* in Common Pleas Court. In Philadelphia County, this motion is generally referred to as a Motion to Quash Return of Transcript." **Commonwealth v. McBride**, 595 A.2d 589, 590 n.2 (Pa. 1991).

[3] Fretts contends that the appeal should be quashed because it is interlocutory and its remedy is to refile those charges. However, under Philadelphia County Local Criminal Rule 500(H), Common Pleas Motions Court judges' orders discharging an accused are final orders subject to appellate review. **See Commonwealth v. Weigle**, 997 A.2d 306, 308 n.5 (Pa. 2010).

Despite filing its notice of appeal a week earlier, on August 30, 2019, the Commonwealth hand-delivered to the trial court a USB drive with the two videos that were shown at the preliminary hearing. After viewing the videos, the trial court now believes there was *prima facie* evidence for the charges to go to trial. Accordingly, the trial court requests that we vacate its order granting the motion to quash and remand so that the trial court may now deny the motion.

"In reviewing a trial court's order granting a defendant's petition for writ of *habeas corpus*, we must generally consider whether the record supports the trial court's findings, and whether the inferences and legal conclusions drawn from those findings are free from error." **Commonwealth v. Hilliard**, 172 A.3d 5, 10 (Pa. Super. 2017) (internal citations and quotation marks omitted). Further, "the evidentiary sufficiency, or lack thereof, of the Commonwealth's *prima facie* case for a charged crime is a question of law," and the appellate court's review is plenary. **Commonwealth v. Karetny**, 583 Pa. 514, 528, 880 A.2d 505, 513 (2005).

"The purpose of a preliminary hearing is to avoid the incarceration or trial of a defendant unless there is sufficient evidence to establish a crime was committed and the probability the defendant could be connected with the crime." **Commonwealth v. Jackson**, 849 A.2d 1254, 1257 (Pa. Super. 2004) (internal citation omitted); **see also** Pa.R.Crim.P. 542(D) (stating issuing authority shall determine from evidence presented at preliminary

hearing whether there is *prima facie* case that (1) an offense has been committed; and (2) the defendant has committed it).

> The Commonwealth establishes a *prima facie* case when it produces evidences that, *if accepted as true*, would warrant the trial judge to allow the case to go to a jury. The Commonwealth need not prove the elements of the crime beyond a reasonable doubt; rather, the *prima facie* standard requires evidence of the existence of each and every element of the crime charged. Moreover, *the weight and credibility of the evidence are not factors at this stage*, and the Commonwealth need only demonstrate sufficient probable cause to believe the person charged has committed the offense. Inferences reasonably drawn from the evidence of record which would support a verdict of guilty are to be given effect, and the evidence must be read in the light most favorable to the Commonwealth's case.

***Commonwealth v. Ouch***, 199 A.3d 918, 923 (Pa. Super. 2018) (internal citations, quotations and emphasis omitted).

After a preliminary hearing,

> A pre-trial *habeas corpus* motion is the proper means for testing whether the Commonwealth has sufficient evidence to establish a *prima facie* case. To demonstrate that a *prima facie* case exists, the Commonwealth must produce evidence of every material element of the charged offense(s) as well as the defendant's complicity therein. To meet its burden, the Commonwealth may utilize the evidence presented at the preliminary hearing and also may submit additional proof.

***Commonwealth v. Dantzler***, 135 A.3d 1109, 1112 (Pa. Super. 2016) (*en banc*) (internal citations and quotation marks omitted).

Relevant to this matter, a trial court's review in a pretrial motion for writ of *habeas corpus* includes the evidence presented at the preliminary hearing and any additional evidence the Commonwealth produces at the hearing on the motion. ***See Commonwealth v. Morman****,* 541 A.2d 356, 360 (Pa.

Super. 1988) ("To make this determination [at a *habeas corpus* hearing], the trial court should accept into evidence the record from the preliminary hearing as well as any additional evidence which the Commonwealth may have available to further prove its prima facie case."). Significantly, we have held that a trial court's use of a diminished record in granting a pretrial *habeas corpus* petition to be a misapplication of the law warranting reversal, as the trial court should review the preliminary hearing transcript in conjunction with all the evidence presented at the hearing. **See Hilliard**, **supra** at 11.

On appeal, the Commonwealth, like the trial court, requests us to remand to the trial court because it dismissed the charges without viewing the two videos that were shown at the preliminary hearing. Relying on **Hilliard**, the Commonwealth argues that the trial court used a diminished record in making its decision. Fretts counters that we should not consider the videos in reviewing the trial court's order. He points out that the Commonwealth never admitted the videos into evidence at the preliminary hearing and did not submit them until after this appeal had been filed.

As related above, the Commonwealth's videos played a central role in the presentation of their case at the preliminary hearing. At the outset of the hearing, both videos were stipulated to by Fretts and then marked for identification as C-2 and C-3, respectively. **See** N.T., 4/17/19, at 5-6. The Commonwealth showed C-2, the video of the collision, to the AID officer, as did Fretts during his cross-examination. **Id**. at 13, 20. According to the AID

officer at the preliminary hearing, this video shows Fretts failing to use his turn signal before turning right onto 11th street. *Id*. at 13. Likewise, the video inside the cab of the truck, which was stipulated to and marked as C-3, was shown twice to the AID officer by the Commonwealth. *Id*. at 15-16. Fretts, meanwhile, made heavy use of the video in his cross-examination, showing it again four times to the officer as the two went back and forth about what Fretts did in the moments before the collision. *Id*. at 24-29.

After our review of the preliminary hearing transcript, we fail to see how any review of the magistrate's decision could be rendered without also viewing the videos. While the videos themselves were not offered into evidence, the videos were shown a total of eight times and formed the core of the AID officer's testimony at the preliminary hearing, making the content of those videos evidence even though the physical "thumb" drives were not introduced. Because the trial court did not take into consideration the content of those videos, the trial court was unable to properly decide whether a *prima facie* case had been made out before the magistrate. *See Hillard*, *supra*. Accordingly, we reverse the trial court's August 14, 2019 order granting Fretts' motion to quash.

However, on remand, a new hearing on Fretts' motion must be held. Because the Commonwealth filed its appeal before submitting the videos, the trial court could no longer proceed on the matter. *See* Pa.R.A.P. 1701(a). As a result, the trial court cannot rule on Fretts' motion to quash until the videos

have been properly admitted and Fretts has been given an opportunity to respond, if he so chooses.

Order reversed. Case remanded. Jurisdiction relinquished.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 8/14/20