J-A12011-23

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT OP 65.37**

| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
|---|---|---|
| | : | PENNSYLVANIA |
| Appellant | : | |
| | : | |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| | : | |
| CLIFFORD PRESS | : | No. 2998 EDA 2022 |

Appeal from the Order Entered November 3, 2022
In the Court of Common Pleas of Monroe County Criminal Division at
No(s): CP-45-CR-0000478-2022

BEFORE: OLSON, J., NICHOLS, J., and McLAUGHLIN, J.

MEMORANDUM BY OLSON, J.:                    **FILED AUGUST 15, 2023**

The Commonwealth of Pennsylvania appeals from the November 3, 2022 order entered in the Court of Common Pleas of Monroe County that granted *habeas corpus* relief to Clifford Press ("Press") on the charges of criminal trespass and criminal mischief.[1]  We reverse the order and remand this case for further proceedings.

The facts of the case as established by the record are as follows.  On January 31, 2021, the homeowner contacted the Pocono Mountain Regional Police and requested that the police respond to her residence to assess

---

[1] 18 Pa.C.S.A. §§ 3503(a)(1)(i) and 3304(a)(5), respectively.

It is well-established, that this Court has jurisdiction over the Commonwealth's appeal from a trial court order dismissing criminal charges based on a pre-trial motion for *writ* of *habeas corpus*. **Commonwealth v. Merced**, 265 A.3d 786, 790 (Pa. Super. 2021).

damage caused by Press and to secure the property. N.T., 1/13/22, at 6, 30, Defense Exhibit D-2.[2] The homeowner resides in the State of New York and the residence, which serves as a second home, is located in Pennsylvania. *Id.* at 5. Due to weather conditions, the homeowner was unable to visit the residence for several days after the incident. *Id.* at 7.

It is undisputed that on January 31, 2021, Press was walking his dog near the residence when the dog escaped its collar and leash in an effort to chase a raccoon. *Id.* at Defense Exhibit D-1 The dog chased the raccoon into a crawl-space beneath the residence and was unable to free itself from the crawl-space.[3] *Id.* In an effort to rescue the dog, Press entered the homeowner's residence through a window and removed floorboards from the first-floor level of the residence in order to access the crawl-space. *Id.* Press contacted the homeowner to report that he entered the residence and caused damage to the residence while rescuing his dog. *Id.*

On May 2, 2021, Press was charged with the aforementioned crimes. On March 11, 2022, Press filed a motion for *writ* of *habeas corpus*, requesting

---

[2] At the hearing on Press' motion for *writ* of *habeas corpus*, the notes of testimony from the preliminary hearing held on January 13, 2022, were admitted as Commonwealth Exhibit C-1. *See* N.T., 10/20/22, at 4. For identification purposes, we refer to Commonwealth Exhibit C-1 as "N.T., 1/13/22, at ____."

[3] The homeowner described the crawl-space as a space beneath the first floor of the residence that had an earth foundation and was accessible through an opening under the rear deck of the residence. N.T., 1/13/22, at 20, 25. There was no immediate access point to the crawl-space from inside the residence. *Id.* at 19-20.

that the trial court dismiss the criminal charges on the ground that the Commonwealth failed to prove a *prima facie* case, namely to prove the *mens rea* element of each of the criminal charges. Motion for *Writ* of *Habeas Corpus*, 3/11/22, at 3-4. On April 12, 2022, Press filed a brief in support of his motion. On June 1, 2022, the Commonwealth filed a brief in opposition to Press' motion. On June 7, 2022, Press filed a reply brief. A hearing on Press' motion was held on June 23, 2022, and October 20, 2022. On November 3, 2022, the trial court granted Press *habeas corpus* relief and dismissed the aforementioned criminal charges. This appeal followed.[4]

The Commonwealth raises the following issue for our review: "Whether the [trial] court erred by failing to view the evidence in the light most favorable to the Commonwealth in dismissing the criminal trespass charge and criminal mischief [charge] at the *habeas* [*corpus*] hearing?" Commonwealth's Brief at 5.

The Commonwealth's issue raises a challenge to the trial court's order granting Press' motion for *habeas corpus* relief. A motion for *writ* of *habeas corpus* is the appropriate vehicle to challenge the sufficiency of the evidence supporting the Commonwealth's *prima facie* case for a criminal charge filed against a defendant. **Commonwealth v. Dantzler**, 135 A.3d 1109, 1112 (Pa. Super. 2016), *appeal denied*, 83 A.3d 414 (Pa. 2013). "[T]he evidentiary

_____

[4] Both the Commonwealth and the trial court complied with Pennsylvania Rule of Appellate Procedure 1925.

- 3 -

sufficiency of the Commonwealth's *prima facie* case for a charged crime is a question of law as to which our standard of review is *de novo* and our scope of review is plenary." ***Commonwealth v. Wroten***, 257 A.3d 734, 742 (Pa. Super. 2021); ***see also Commonwealth v. Hilliard***, 172 A.3d 5, 12 (Pa. Super. 2017) (stating, "the evidentiary sufficiency, or lack thereof, of the Commonwealth's *prima facie* case for a charged crime is a question of law").

It is well-established that, in order for criminal charges to be "held over" for trial, the Commonwealth bears the burden, at a preliminary hearing, of establishing a *prima facie* case that the crime was committed and that the accused is probably the one who committed it. ***Commonwealth v. Weigle***, 997 A.2d 306, 311 (Pa. 2010). A preliminary hearing is not a trial, but rather, the "principal function of a preliminary hearing is to protect an individual's right against an unlawful arrest and detention." ***Id.***

> A *prima facie* case exists when the Commonwealth produces evidence of each of the material elements of the crime charged and establishes probable cause to warrant the belief that the accused committed the offense. Furthermore, the evidence need only be such that, if presented at trial and accepted as true, the [trial court] would be warranted in permitting the case to be decided by the jury.

***Id.*** (citation and quotation marks omitted).

In reviewing a challenge to the sufficiency of evidence to support the Commonwealth's *prima facie* case, we are cognizant of the following principles.

> In reviewing the determination of whether the Commonwealth met its burden of establishing a *prima facie* case for a charged

- 4 -

crime, the trial court is afforded no discretion in ascertaining whether, as a matter of law and in light of the facts presented to it, the Commonwealth [] carried its pre-trial, *prima facie* burden to make out the elements of a charged crime. Hence, we are not bound by the legal determinations of the trial court. Furthermore, it is inappropriate for the trial court to make weight or credibility determinations when assessing whether the Commonwealth established a *prima facie* case.

Inferences reasonably drawn from the evidence of record which would support a verdict of guilty are to be given effect at a preliminary hearing, and the evidence must be read in the light most favorable to the Commonwealth's case. The use of inferences is a process of reasoning by which a fact or proposition sought to be established is deduced as the logical consequence from the existence of other facts that have been established. The "more-likely-than-not" test, must be applied to assess the reasonableness of inferences relied upon in establishing a *prima facie* case of criminal culpability."

**Wroten**, 257 A.3d at 742-743. (citations, brackets, and some quotation marks omitted); **see also Commonwealth v. Santos**, 876 A.2d 360, 363 (Pa. 2005) (stating, "the evidence must be considered in the light most favorable to the Commonwealth so that inferences that would support a guilty verdict are given effect").

Section 3503(a)(1)(i) of the Crimes Code states that a person is guilty of criminal trespass "if, knowing that he[, or she,] is not licensed or privileged to do so, he[, or she,] enters, gains entry by subterfuge[,] or surreptitiously remains in any building or occupied structure or separately secured or occupied portion thereof[.]" 18 Pa.C.S.A. § 3503(a)(1)(i). Thus, the Commonwealth must prove that a defendant (1) knew he or she was not licensed or privileged to enter the premises (the *mens rea* element) and (2)

- 5 -

he or she entered the premises.  ***See Commonwealth v. Jackson***, 10 A.3d 341 (Pa. Super. 2010).

The term "knowing" or "knowingly" is defined by Section 302 of the Crimes Code, in pertinent part, as follows:

> A person acts knowingly with respect to a material element of an offense when:
>
> (i) if the element involves the nature of his[, or her,] conduct or the attendant circumstances, he[, or she,] is aware that his[, or her,] conduct is of that nature or that such circumstances exist[.]

18 Pa.C.S.A. § 302(b)(2)(i); ***see also*** 18 Pa.C.S.A. § 103 (equating the terms "knowing" and "knowingly").  Thus, to do something knowingly involves a consciousness to act.

Section 3304 of the Crimes Codes states that "[a] person is guilty of criminal mischief if he[, or she,] intentionally damages real or personal property of another[.]"  18 Pa.C.S.A. § 3304(a)(5).  "A person acts intentionally with respect to a material element of an offense when[,] if the element involves the nature of his[, or her,] conduct or a result thereof, it is his[, or her,] conscious objective to engage in conduct of that nature or to cause such a result[.]"  18 Pa.C.S.A. § 302(b)(1)(i).  Thus, to intentionally damage real or personal property of another, an individual must be consciously aware that his or her conduct or action will result in damage and proceed in the face of this awareness.

In granting Press' request for *habeas corpus* relief, the trial court explained,

- 6 -

[Press] acted with no malice when he attempted to save his dog, who was trap[ped] under [the residence] and being attacked by a raccoon. The facts here are undisputed. On January 31, 2021, [Press] was walking his dog when the dog slipped its collar and chased a raccoon under a [residence. Press] could not get to his dog but could hear that it was under distress and felt that it may soon die. For the sole purpose and with the intent of rescuing his dog, [Press] enter[ed] the [residence] through a secured window by lifting the latch. He proceeded to break a small section of floor and retrieved his dog, securing the [residence] as he left. [Press] then went to a neighbor, retrieved the contact information for the homeowner and contacted her, explaining what had just transpired. [Press] offered to pay for damages. From these facts we can see that [Press'] clear intent was to rescue his dog from the raccoon. There is no malicious intent, *mens rea*, or evil motive by [Press] to commit a trespass or mischief, only to save his dog. Thus, the intent requirement for criminal trespass and criminal mischief are not satisfied, and the Commonwealth cannot produce evidence of each of the material elements of the crimes charged.

Trial Court Opinion, 1/11/23, at 5-6.

In viewing the evidence in the light most favorable to the Commonwealth, as the party with the burden of proof, we find that the Commonwealth presented sufficient evidence to support a *prima facie* case for criminal trespass and criminal mischief. Turning first to the criminal trespass charge, the Commonwealth was required to demonstrate probable cause sufficient to establish that Press entered the residence with the knowledge that he did so without license or privilege. *See* 18 Pa.C.S.A. §§ 302(b)(2)(i) and 3503(a)(1)(i). The fact that Press knew, or was consciously aware, that he entered the residence without license or privilege may be inferred from his manner of entry. *Commonwealth v. Gordon*, 477 A.2d 1342, 1348 (Pa. Super. 1984) (stating that, the fact that a defendant knew he lacked

license or privilege to enter the building may be "inferred from the evidence of the time and manner of his entry"); *see also Commonwealth v. Benito*, 133 A.3d 333, 336 (Pa. Super. 2016), *appeal denied*, 141 A.3d 477 (Pa. 2016). The evidence presented in the case *sub judice* demonstrates that Press entered the residence "through a secure[d] window by lifting the latch." N.T., 1/13/22, at Defense Exhibit D-2; *see also* N.T., 1/13/22, at 5-6 (reiterating that Press informed the homeowner that "he went in through a window"); N.T., 1/13/22, at 43 (agreeing that Press informed the police that he "entered the house through a window"); Trial Court Opinion, 1/11/23, at 5 (stating, "[Press] enter[ed] the [residence] through a secured window by lifting the latch"). Because the window through which Press entered the residence was secured, *i.e.* locked or latched, it may be inferred that Press knew, or was consciously aware, that the homeowner intended for individuals to be prohibited from entering the residence and that by unlocking or unlatching the window to gain entry he was knowingly entering the residence without license or privilege. Therefore, the Commonwealth established a *prima facie* case for criminal trespass by demonstrating the requisite level of culpability, namely that Press knowingly entered the residence without license or privilege.[5]

---

[5] We find the trial court's requirement that the Commonwealth demonstrate malice in order to establish a *prima facie* case of criminal trespass and criminal mischief, as discussed *infra*, to be misplaced. **See** Trial Court Opinion, 1/11/23, at 5 (stating, "[Press] acted with no malice when he attempted to save his dog").

As for the crime of criminal mischief, the Commonwealth was required to demonstrate probable cause sufficient to establish that Press intentionally

---

"Malice is a legal term, implying much more than ill-will, spite, or a grudge. It comprehends not only a particular ill-will, but every case where there is wickedness of disposition, hardness of heart, cruelty, recklessness of consequences, and a mind regardless of social duty, although a particular person may not be intended to be injured."

***Commonwealth v. Ludwig***, 874 A.2d 623, 632 (Pa. 2005), *citing **Commonwealth v. Drum***, 58 Pa. 9, 15 (1868). We agree that "malice" is embraced or encompassed within the culpability terms "intentionally," "knowingly," and "recklessly." ***See Commonwealth v. Moll***, 543 A.2d 1221, 1222 (Pa. Super. 1988) (stating, "malice is [] embraced within the elements of intent, knowledge[,] and recklessness"); ***see also*** 18 Pa.C.S.A. § 302, *Comments* (stating, "The purpose of [Section 302] is to clearly define the various mental states upon which criminal liability is to be based. Under existing law the words "wilfully" or "maliciously" are used in many cases. [] However, these words have no settled meaning."). In other words, if the Commonwealth demonstrates that a person acted with malice, then the Commonwealth has also proven that the person acted intentionally, knowingly, or recklessly. A showing of malice, however, is not required in every instance to prove a criminal charge where the requisite level of culpability, as defined by the statute, requires that a person acted intentionally, knowingly, or recklessly. It is well-established that courts must look to the statutorily defined criminal offense to determine the requisite level of culpability. ***See Commonwealth v. Grant***, 243 A.2d 511, 515 (Pa. Super. 1975) (stating that, the level of culpability that must be proven "is a matter of construction, to be determined from the language of the statute and from the manifest purpose and design"); ***see also Commonwealth v. McHale***, 858 A.2d 1209, 1212 (Pa. Super. 2004) (explaining that, a showing of "malice" is required to prove aggravated assault under 18 Pa.C.S.A. § 2702(a)(1) because the requisite level of culpability – intentionally, knowingly, or recklessly – is quantified in the statute by the phrase "extreme indifference to the value of human life").

Pursuant to the statutorily defined criminal offenses of criminal trespass and criminal mischief pertinent to the case *sub judice*, we do not find that the subject offenses require the Commonwealth to demonstrate malice.

- 9 -

damaged the flooring of the residence. *See* 18 Pa.C.S.A. §§ 302(b)(2)(i) and 3304(a)(5). The evidence demonstrated that, upon entering the residence, Press located the portion of the flooring under which the dog was trapped and, in order to rescue the dog, he "started **to break** a small section of the floor." N.T., 1/13/22, at Defense Exhibit D-2 (emphasis added); *see also* N.T., 1/13/22, at 34 (stating that, Press informed the police that he "needed to remove the floorboards to retrieve his dog"). After rescuing the dog and securing the residence, Press contacted the homeowner and offered to pay for the damage he caused to the floor. N.T., 1/13/22, at 15 (stating, Press offered to have a person repair the floor); *see also* N.T., 1/13/22, at 35 (stating that, Press informed the police that he contacted the homeowner "to take care of the damages"). It may be inferred from Press' subsequent offer to remediate the damage caused to the flooring that he intentionally damaged (or broke) the flooring to rescue his dog.

Therefore, we conclude that the trial court erred as a matter of law in granting Press' request for *habeas corpus* relief. Consequently, we reverse the November 3, 2022 order granting his motion for *writ* of *habeas corpus*.

Order reversed. Case remanded. Jurisdiction relinquished.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: <u>8/15/2023</u>