J-A29018-15

2016 PA Super 122

| COMMONWEALTH OF PENNSYLVANIA, | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|
| Appellee | |
| v. | |
| LEON DATAWN FORD, | |
| Appellant | No. 1669 WDA 2014 |

Appeal from the Judgment of Sentence September 15, 2014
In the Court of Common Pleas of Allegheny  County
Criminal Division at No(s): CP-02-CR-0003273-2013

BEFORE:  FORD ELLIOTT, P.J.E., BOWES AND MUSMANNO, JJ.

OPINION BY BOWES, J.:                                          **FILED JUNE 14, 2016**

Leon DaTawn Ford appeals from the judgment of sentence of a determination of guilt without further penalty after the court found him guilty of summary violations of 75 Pa.C.S. § 3323, failure to stop at a stop or yield sign, and 75 Pa.C.S. § 3714, careless driving.  After careful review, we affirm.

The Commonwealth initially charged Appellant via criminal complaint with two counts of aggravated assault, three counts of recklessly endangering another person ("REAP"), and one count each of failing to yield and reckless driving. The affidavit of probable cause in support of the complaint, however, referenced Appellant failing to stop at a stop sign.  At Appellant's preliminary hearing, the Commonwealth orally added a count for

failing to stop as well as the charges of resisting arrest and escape. The escape charge was dismissed at the preliminary hearing, but the remaining charges were bound over for trial. Prior to trial, the Commonwealth succeeded in having the escape charge reinstated.[1] Appellant proceeded to a jury trial on the non-summary counts. The criminal information described the § 3323 charges as failing to yield at two separate counts. The trial transpired from September 2, 2014 through September 15, 2014.

The evidence at trial was as follows. Pittsburgh Police Officers Michael Kosko and Andrew Miller observed Appellant traveling at a high rate of speed

---

[1] The Commonwealth did not follow Pa.R.Crim.P. 544, as it pertains to reinstituting charges after they have been dismissed. We add that in **Commonwealth v. Weigle**, 997 A.2d 306 (Pa. 2010), our Supreme Court held that it was improper to set forth, in a criminal information under Pa.R.Crim.P. 560(B)(5), a charge that had been dismissed at a preliminary hearing. Rule 560(B)(5) permits the Commonwealth to include in its criminal information a crime that was not charged that is cognate to an offense charged in the criminal complaint. The **Weigle** Court reasoned,

> Rule 560(B)(5) obviously was not adopted or intended to serve as a prosecutorial avoidance of an adverse preliminary hearing decision involving charges that were actually forwarded in a criminal complaint, only to be dismissed by a judicial officer for want of a *prima facie* case. To hold otherwise would defeat the purpose of the preliminary hearing procedure and make the Commonwealth, in essence, the sole architect and arbiter of a predetermined "appeal" that would substitute for the appeal it could have pursued, but did not.

*Id*. at 315. As Appellant was not found guilty of the escape charge and the Commonwealth did not seek to prosecute that crime after the jury could not reach a verdict, we need not address whether the Commonwealth's actions were improper.

in a gray Infiniti. The officers were traveling the wrong way down a one-way street in a marked cruiser when Appellant passed them.[2] Officer Kosko turned his vehicle around and accelerated to 52 mph in a 25-mph zone to catch up to Appellant. He did not activate his siren or lights at that time. While pursuing the vehicle, Officer Miller was able to run the license plate and ascertain that the car was not reported stolen. After gaining ground on the vehicle, Officer Kosko activated his lights and siren to effectuate a traffic stop. Prior to pulling Appellant over, Officer Kosko and his partner also believed that Appellant proceeded through two stop signs without coming to a stop.[3] Officer Miller specifically related that Appellant "did not stop for a stop sign at Stanton and Meadow and, once again, at Stanton and I believe Sheridan." N.T., 9/3/14, at 449. Upon Officer Kosko turning on his siren and lights, Appellant activated his turn signal and pulled over immediately. Officer Miller radioed in the stop. Officer Kosko then exited his vehicle and approached the driver's side door. Officer Miller walked to the passenger side door.

Officer Kosko asked for Appellant's license, registration, and proof of insurance. Appellant provided his license, a bill of sale, and proof of

---

[2] There is no indication in the record as to why the officers were driving the wrong way down a one-way street.

[3] Officer Kosko acknowledged at trial that the affidavit of probable cause for arrest incorrectly indicated that Appellant proceeded through a stop sign at Meadow Street and St. Marie Street.

insurance. According to Officer Kosko, he explained that the reason for pulling over Appellant was his speeding, and he could not recall whether he informed Appellant about not coming to a stop at two stop signs. After receiving Appellant's license, Officer Kosko returned to his cruiser to run Appellant's information through a police computer inside the car. Officer Miller then went to the driver's side door and engaged in small talk with Appellant. Officer Kosko, after learning that there were no active warrants for Appellant, ran an additional check for "L. Ford." That check resulted in the computer displaying that a Lamont Ford, who is unrelated to Appellant, had an active warrant for his arrest and the officer was able to retrieve a photograph of Lamont Ford.

Officer Kosko believed that the photograph of Lamont Ford resembled Appellant and re-approached Appellant's car, looked at Appellant, and returned to the cruiser. Officer Kosko then returned and asked Officer Miller to look at the photographic display of Lamont Ford in the police cruiser. Officer Miller returned to the police car while Officer Kosko began to ask Appellant if he had any brothers or siblings, and he testified that he told Appellant that he resembled a person with an outstanding warrant.

After seeing the picture of Lamont Ford, Officer Miller radioed his fellow officer, David Derbish. Officer Derbish previously had interacted with Lamont Ford. Officer Derbish was in the area and responded within approximately two minutes. Both Officer Derbish and Officer Miller had a

conversation in Officer Miller's cruiser regarding whether Appellant was Lamont Ford. Officer Derbish indicated that he believed Appellant was Lamont Ford.

Officer Derbish also maintained that when he approached Appellant's car on the passenger side, he believed that he saw a bulge in Appellant's pants that could have been a gun. He motioned to Officer Miller and informed him of his suspicion. Officer Miller agreed that there was a bulge and walked back to the driver's side of the car and asked Appellant to exit the vehicle. Appellant repeatedly refused and attempted to place a call on his cell phone. Officer Miller instructed him that he could not use the phone and put his hand on Appellant's shoulder. Appellant continued to attempt to place a call and Officer Miller tried to take Appellant's phone. In total, Officer Miller asserted that he asked Appellant to step from the car six times.

When Appellant reached to the right side of his body, where Officer Miller and Officer Derbish observed the bulge, Officer Miller tried to physically remove Appellant from the car. Officer Miller and Officer Derbish both saw Appellant reach for the gear-shift in the center console. Officer Derbish then entered the passenger side of the car and attempted to restrain Appellant. Officer Derbish placed his knees in the front passenger seat and struggled with Appellant and shouted, "Stop, stop, stop." N.T., 9/4/14, at 646. Appellant engaged the gear shift and began to drive the vehicle and the door closed behind Officer Derbish. According to Officer

Derbish, Appellant pushed him in the chest as Appellant accelerated the car. Officer Derbish maintained that he feared for his life and drew his pistol from his holster and fired his weapon five times, striking Appellant multiple times.

As a result of being shot, Appellant crashed the vehicle. Officer Kosko ran to the car, removed Appellant, and placed him in handcuffs on the ground. Officer Miller also approached and radioed for medics. Officer Derbish suffered minor injuries. Appellant, however, suffered significant spinal injuries that resulted in paraplegia.

Both the trial court and jury viewed a video of the traffic stop that began when Officer Kosko turned on his siren and lights while in pursuit of Appellant. The jury found Appellant not guilty of the aggravated assault charges, but was unable to reach a verdict on the remaining non-summary counts. The trial court adjudicated Appellant guilty of one count of failing to stop at a stop sign and careless driving, the latter conviction constituting a lesser-included offense of the reckless driving count charged.

The court entered its judgment of sentence on September 15, 2014, and imposed no penalty for the summary violations. Appellant timely appealed and the court directed that he file and serve a Pa.R.A.P. 1925(b) concise statement of errors complained of on appeal. The trial judge in this matter retired, and the case was reassigned to the Honorable Lester Nauhaus, who authored a Rule 1925(a) decision, opining that Appellant's

convictions were infirm. The Commonwealth did not seek a retrial of the remaining counts and *nolle prossed* those charges.

The matter is now ready for this Court's review. Appellant raises two issues for our consideration.

> I.   Was the verdict rendered against the weight of the evidence?
>
> II.  Was the verdict rendered supported by the sufficiency of the evidence?

Appellant's brief at 5.

Although Appellant lists his sufficiency claim second in his statement of issues, he argues that position first. Moreover, since a successful sufficiency charge warrants discharge rather than a retrial, we address Appellant's second issue first. ***Commonwealth v. Stokes***, 38 A.3d 846 (Pa.Super. 2011). In reviewing a sufficiency claim, we consider the entirety of the evidence introduced, including improperly admitted evidence. ***Commonwealth v. Watley***, 81 A.3d 108, 113 (Pa.Super. 2013) (*en banc*). We view that evidence in a light most favorable to the Commonwealth, drawing all reasonable inferences in favor of the Commonwealth. ***Id***. The evidence "need not preclude every possibility of innocence and the fact-finder is free to believe all, part, or none of the evidence presented." ***Id***. Only where "the evidence is so weak and inconclusive that, as a matter of law, no probability of fact can be drawn from the combined circumstances[,]" is a defendant entitled to relief. ***Id***. We do not "re-weigh

the evidence and substitute our judgment for that of the fact-finder." ***Id***. As the question of the sufficiency of the evidence is one of law, we consider the evidence *de novo*. ***Commonwealth v. Sanchez***, 36 A.3d 24, 37 (Pa. 2011).

Appellant's initial argument, though ostensibly a sufficiency of the evidence claim, is primarily focused on the fact that the trial court found him guilty of failing to stop at a stop sign when the criminal information sets forth the charge as failing to stop at a yield sign. Appellant argues that 75 Pa.C.S. § 3323(c), which relates to a yield sign violation, is inapplicable because no yield sign existed on Appellant's course of travel. He highlights that the video footage of the traffic incident does not show a yield sign and that no officer testified that Appellant failed to properly yield at such a sign.

In addition, Appellant maintains that there were discrepancies between the testimony of Officer Kosko and Officer Miller regarding where the first stop sign violation transpired. He posits that the only uncontroverted evidence relative to a stop sign violation shows that Appellant applied his brakes as he approached the first stop sign, before using his left turn signal and turning. Appellant continues that video footage depicts brake lights, thus demonstrating that he used his brakes upon coming to the second stop sign in question.

With respect to his careless driving charge, Appellant submits that there is no evidence that he operated his vehicle in careless disregard for the

safety of other persons or property. According to Appellant, "at no point is the Appellant's vehicle seen driving too fast for conditions of the roadway, or committing any other motor vehicle code violation." Appellant's brief at 15. Appellant highlights that Judge Nauhaus, who did not preside over the trial, wrote in his Rule 1925(a) opinion that the officers did not use radar to determine if Appellant was speeding and that the video footage indicated that he did not go through a stop sign. In Appellant's view, the findings of guilt are the result of conjecture and speculation.

The Commonwealth counters that Appellant waived any challenge relative to the citation to the yield signs subsection in the criminal information. It first notes that trial counsel placed on the record that Appellant was charged with running a stop sign. The Commonwealth adds that, at the close of its case, Appellant did not raise the issue by making a motion for judgment of acquittal. Appellant also did not challenge the stop sign conviction based on the criminal information discrepancy after the court announced its verdict or raise the issue in his post-sentence motions or at the hearing on that motion.

The Commonwealth highlights that the affidavit of probable cause in support of the criminal complaint and the preliminary hearing transcript both reference Appellant committing summary stop sign violations. Further, Appellant's counsel in his own opening statement maintained that Appellant was charged with neglecting to come to a complete stop at a stop sign.

Thus, it maintains that Appellant was clearly on notice of the charge and, in fact, he defended against that summary offense.

With regard to the evidence that Appellant failed to stop at a stop sign, the Commonwealth first notes that Officer Kosko, while acknowledging a mistake in describing the location of the first violation in the affidavit of probable cause, testified that Appellant failed to stop at two separate stop signs. Furthermore, Officer Miller confirmed that Appellant did not come to a complete stop at two stop signs. The Commonwealth points out that the trial judge heard this testimony and watched a video depicting the traffic incident. It correctly sets forth that the trial court was free to determine that Officers Kosko and Miller credibly testified that Appellant failed to stop at the second stop sign in question. Insofar as Appellant and Judge Nauhaus rely on the fact that Appellant applied his brakes, the Commonwealth contends that a driver may apply his brakes and still drive through a stop sign without stopping. The Commonwealth asserts that although Appellant applied his brakes, he did not come to a complete stop.

Lastly, the Commonwealth argues that sufficient evidence existed to find that Appellant engaged in careless driving. It notes that both Officer Kosko and Officer Miller testified that Appellant was driving at a high rate of speed. Thus, the trial court was free to find this testimony credible. Additionally, the Commonwealth submits that police are not required to use a radar device to gauge speed in order to establish careless driving and that

the driving at an unsafe speed occurred before the video camera lights were activated.

We first address the discrepancy between the criminal information and the charge that the trial court found Appellant guilty of violating. Appellant is correct that the criminal information references yield sign violations. However, he is entitled to no relief. Initially, we agree that this aspect of Appellant's position is waived. Although sufficiency of the evidence arguments need only be preserved in a Rule 1925(b) concise statement, Appellant's actual argument relates to a defect in the criminal information. Not only did Appellant not raise this issue at any stage of the trial court proceedings before filing his 1925(b) statement, counsel expressly placed on the record that Appellant was defending against a failure to stop. At one point counsel set forth, "He's charged with stop signs. We have to get into this. The Court is going to have to make a decision on the stop signs. This is the same pursuit where he's stopped." N.T., 9/4/14, at 572. Later, separate defense counsel remarked to the court,

> Appellant's counsel (Mr. Malone): Judge, he'll plead to going through the stop sign.
>
> Appellant's counsel (Mr. Rabner): We're offering a plea.
>
> The Court: Would it help if he plead [sic] to going through two stop signs?

*Id*. at 768.[4]

Defense counsel also questioned Appellant regarding the alleged stop sign violation, stating, "When you're coming up Shetland, there would a stop sign governing your turn there; correct?" N.T., 9/8/14, at 1152. Appellant responded, "Yes." *Id*. Counsel then inquired, "And did you honor that stop sign?" *Id*. Appellant answered in the affirmative. Counsel continued his defense relative to the second stop sign violation by questioning Appellant further. The following exchange occurred:

Defense Counsel: Was there a stop sign governing that intersection at Stanton and Meadow?

Appellant: Yes.

Defense Counsel: Did you stop at that one?

Appellant: Yes.

*Id*. at 1153-54.

In defense counsel's closing summation, in asserting that the traffic stop was pretextual, he argued that Appellant did not violate the stop sign law, opining, "From Leon Ford's perspective, ladies and gentleman, from Leon Ford's perspective he stopped. I submit to you, tell me why. You tell

_____

[4] We do not set forth the offer as grounds for finding Appellant guilty as that is clearly improper. Rather, it indicates that counsel was aware that the charge related to proceeding through a stop sign and that Appellant was on notice of the charge.

me why. 'He went by us at a stop sign.' But he stopped for the stop sign."

N.T., 9/9/14, at 1357.

Here, Appellant was not only on notice of the stop sign violation, but defended against that charge. Since there was no objection to the discrepancy between the charges of failure to yield, leveled in the criminal information, and the related charge of failing to stop at a stop sign, for which he was prosecuted and found guilty, this aspect of his argument is waived.

Even if not waived, the defect with the criminal information, standing alone, does not warrant relief. Concededly, the criminal information contained headings for failure to yield and described that offense, citing only to 75 Pa.C.S. § 3323. The criminal information did not cite § 3323(b), the specific provision relative to stop signs.[5] However, our criminal procedural rules provide, "The information shall contain the official or customary citation of the statute and section thereof, or other provision of law that the defendant is alleged therein to have violated; but the omission of or error in such citation shall not affect the validity or sufficiency of the information." Pa.R.Crim.P. 560(C). **See also Commonwealth v. Grant**, 183 A. 663, 666

---

[5] The stop sign and yield sign summary offenses are both contained in 75 Pa.C.S. § 3323, but are defined in different subsections. The yield sign violation is contained in subsection (c).

(Pa.Super. 1936) ("an indictment is not defective because it does not refer to the act of assembly on which it was based.").

We find our case law discussing the amendment of a criminal information particularly instructive herein. In **Commonwealth v. Sinclair**, 897 A.2d 1218 (Pa.Super. 2006), this Court provided that, in evaluating a court's decision to allow a criminal information to be amended, we examine whether the defendant was fully apprised of the factual scenario which supports the charges against him. The **Sinclair** Court added that when the crime in the original information involves the same basic elements and arises from the same factual situation, the defendant is deemed to be placed on notice of the different alleged criminal conduct.

Here, it is beyond cavil that Appellant knew of the facts surrounding the failure to stop offense. The only material difference in the elements of the offenses is the distinction between a stop sign and a yield sign. Had Appellant raised the issue, the Commonwealth could have amended the information because it would not have alleged a different set of events or resulted in Appellant having to advance a materially different defense. **Id**. at 1221. In this respect, "our Supreme Court has stated that following an amendment, relief is warranted only when the variance between the original and the new charges prejudices an appellant by, for example, rendering defenses which might have been raised against the original charges

ineffective with respect to the substituted charges." **Id**. at 1223 (citing **Commonwealth v. Brown**, 727 A.2d 541, 543 (Pa. 1999)).

In the present case, the charge of failing to stop at a stop sign did not add any new facts that Appellant did not know and the entire factual scenario was developed at his preliminary hearing. As discussed, Appellant defended against a failure to stop offense and therefore neither his defense strategy nor his trial preparation was implicated. **See Sinclair**, **supra** at 1223. Accordingly, Appellant suffered no prejudice and is not entitled to relief.

In addition, we agree that sufficient evidence existed to establish that Appellant failed to stop at a stop sign. As stated, *supra*, this Court is bound by the credibility determinations of the fact-finder. Both Officer Kosko and Officer Miller testified that Appellant ran a stop sign. The trial court viewed the video and heard their testimony. It observed that Appellant applied his brakes before the latter stop sign, but nonetheless determined that he did not come to a complete stop.

This Court also reviewed the video footage, which was included in the certified record, of Appellant's driving behavior before he was pulled over by police. That footage supports the factual findings of the trial court that, at the first stop sign, Appellant applied his brakes briefly before reaching the stop sign, and then turned left, utilizing his signal. Appellant did not bring

his car to a complete halt at that sign. At the second stop sign, Appellant slowed and applied his brakes, but again failed to stop.

This is not a case where the evidence is so weak and inconclusive that no probability of fact can be drawn from it. Viewing the evidence in a light most favorable to the Commonwealth and based on the trial court's credibility determinations, sufficient evidence was introduced to find that Appellant failed to stop at a stop sign.

As it pertains to Appellant's careless driving conviction, we find that Appellant's sufficiency claim also fails. To establish a careless driving violation, the Commonwealth must demonstrate that the individual drove "a vehicle in careless disregard for the safety of persons or property[.]" 75 Pa.C.S. § 3714. "The *mens rea* requirement applicable to § 3714, careless disregard, implies less than willful or wanton conduct but more than ordinary negligence or the mere absence of care under the circumstances." ***Commonwealth v. Gezovich***, 7 A.3d 300, 301 (Pa.Super. 2010) (internal quotations omitted). Officers Kosko and Miller testified that Appellant drove on a residential roadway at a high rate of speed. In order to catch up with Appellant, Officer Kosko had to drive 52 mph. This testimony, believed by the fact-finder, is sufficient to prove careless driving. ***Compare id***. at 303 (finding insufficient evidence to convict the defendant of careless driving and opining, "There is no indication that Appellant was speeding[.]"). Moreover, Appellant pulled his vehicle away from a traffic stop with a police officer who

was attempting to prevent Appellant from driving away, kneeling on Appellant's front passenger seat with the door slightly ajar. This action also constituted careless driving.

Appellant also argues that his convictions were against the weight of the evidence. A weight claim must ordinarily be preserved in a timely post-sentence motion. ***Commonwealth v. Lofton***, 57 A.3d 1270, 1273 (Pa.Super. 2012).[6] Counsel may also raise the issue orally on the record or in writing prior to sentencing. ***Id***.; Pa.R.Crim.P. 607. Appellant failed to preserve his weight issue as he did not file a post-sentence motion raising the allegation nor did he make an oral or written motion before sentencing. Therefore, the claim is waived. ***Lofton***, ***supra*** at 1273.[7]

Following submission of this matter to the panel, Appellant filed an application for remand for a hearing based upon the existence of after-discovered evidence uncovered during federal litigation that he instituted as a result of this incident. Two categories of proof are presented as warranting remand: 1) documents supporting the fact that the three officers involved in this interdiction engaged in pattern of behavior designed to

_____

[6] We are aware that in cases that involve only summary charges a defendant is not required to file a post-sentence motion to preserve such a challenge. ***See*** Pa.R.Crim.P. 720(D). That rule does not apply herein.

[7] We note that Appellant's failure in this regard was especially important considering that the trial court who presided in this matter retired and was never afforded an opportunity to address the weight claim.

effectuate a motor vehicle stop based upon the slightest Motor Vehicle Code infraction by a minority individual; and 2) reports indicating the possible falsity of the reason offered at trial as to why Officer Kosko was not wearing his body microphone during the incident. Appellant posits that the former evidence would have demonstrated that his traffic stop was pretextual, resulting in suppression, and that the latter proof would have established that Officer Kosko perjured himself at trial.

A defendant can obtain a new trial based on after-discovered evidence if he demonstrates that the proof in question "(1) could not have been obtained prior to trial by exercising reasonable diligence; (2) is not merely corroborative or cumulative; (3) will not be used solely to impeach a witness's credibility; and (4) would likely result in a different verdict. The proposed new evidence must be producible and admissible. **Commonwealth v. Griffin**, 2016 PA Super 81, 2016 WL 13916682016 (April 8, 2016) (citations and quotation marks omitted).

The evidence about pretextual stops would not have changed the result herein. As noted, the objective proof supported the finding that Appellant failed to stop at two stop signs and exhibited careless driving. The officers' subjective motivations for stopping Appellant's vehicle were irrelevant as long as the stop in question did not violate Appellant's Fourth Amendment rights. **Whren v. United States**, 517 U.S. 806, 813 (1996) (citation omitted) ("subjective intent alone does not make otherwise lawful

- 18 -

conduct illegal or unconstitutional"); *accord Commonwealth v. Chase*, 960 A.2d 108, 120 (2008) (once objective validity for stop is established, "constitutional inquiry into the officer's motive for stopping the vehicle is unnecessary"). The vehicular stop herein was premised upon the existence of probable cause to believe that Appellant committed Motor Vehicle Code infractions, as was established in the dashboard video of Appellant's driving behavior. Thus, Appellant's stop did not violate the Fourth Amendment, which renders Appellant's pretext proof irrelevant.

The body microphone issue concerns the fact that Officer Kosko stated at trial that he was not wearing it because he had just entered a citizen's home, where the wearing of such devices are forbidden due to the Wiretap Law. Appellant's proposed evidence is that, in a police report, Officer Kosko did not cite this excuse as a reason for failing to wear the microphone and that there are no records establishing that Officer Kosko entered a citizen's home prior to this incident.

Initially, we note that Appellant is merely claiming that the explanation at trial was not corroborated by other proof, which does not establish that it was, in fact, false. Moreover, whether Officer Kosko was wearing a microphone is irrelevant in this appeal. The only matter before this Court concerns whether Appellant committed the traffic infractions, which were captured on the dashboard camera. A body microphone would not have established perjury in that respect. Since the proof in question is unrelated

to Appellant's guilt or innocence to the traffic offenses challenged on appeal, a hearing on after-discovered evidence on this basis is not warranted. ***See Griffin***, ***supra***.

Appellant's application for remand denied. Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 6/14/2016