J-S70012-16

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA, | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| STEPHON HARRIS, | |
| Appellant | No. 2388 EDA 2015 |

Appeal from the Judgment of Sentence of February 20, 2015
In the Court of Common Pleas of Philadelphia County
Criminal Division at No(s): CP-51-CR-0010090-2013

BEFORE:  OLSON, OTT and MUSMANNO, JJ.

MEMORANDUM BY OLSON, J.:                    **FILED NOVEMBER 10, 2016**

Appellant, Stephon Harris, appeals from the judgment of sentence entered on February 20, 2015, as made final by the denial of his post-sentence motion on June 30, 2015.  We affirm.

The trial court accurately summarized the factual background of this case as follows:

> These charges arose out of a dispute over a woman that both the Appellant and the decedent had an interest in.  On July 9, 2013, at approximately 9:45 [p.m.], John Anderson ("Anderson") . . . was shot and killed in the entryway of [his apartment].  The entryway at this location had a street entrance door and a second door that led up to the single, second floor apartment that Anderson shared with Naheem Hines ("Hines"), and Mohamad Khardani ("Khardani"). . . . Khardani owned the building that housed the apartment, and a pizza shop located below the apartment where Khardani worked.
>
> Earlier that day, Anderson had exchanged a series of text messages and phone calls with the girlfriend of Appellant when

Appellant intercepted his girlfriend's phone [call] and spoke directly to Anderson. An argument ensued over the phone and Anderson said, "I'm at 72nd, do what you gotta do." Appellant was visiting his friend Davon Kennedy ("Davon") . . . and Davon's cousin[ (and Appellant's c]o-defendant [Unique] Kennedy [("Unique")] . . . when he recounted the argument that he had with [Anderson] over the phone. Appellant said that "Anderson needed to go." The three [] men walked to a store then Appellant and [Unique] told Davon they would catch up with him later, and walked away together.

That evening, Hines was returning to the apartment when he saw two [] males who appeared to be attempting to open the apartment's street level entry door. Though the males were unfamiliar to Hines, he was later able to identify [Unique] as one [] of the males. As Hines approached, the two [] males drifted away from the apartment door and towards the pizza shop. Hines asked Khardani, who was working in the pizza shop at the time, if he knew the two [] males. Khardani recognized Appellant as a repeat customer of the pizza shop and greeted him. . . . Khardani did not recognize [Unique].

[Unique] asked Hines whether [Anderson] was at home and said "Ace" was looking for him. Hines replied that he did not know but would check when he went upstairs. Upon arriving upstairs, Hines learned that Anderson was indeed at home along with Tanesha Brooks-Mapp ("Brooks-Mapp"). . . . Hines delivered the message that there were two [] males downstairs who were looking for [Anderson]. Hines, Brooks-Mapp[,] and Anderson went downstairs to the main entry of the apartment. Anderson was unarmed. As soon as Anderson began to open the interior door, five to six [] gunshots rang out and Anderson fell to the floor in the doorway of the apartment. Hines was able to see that [Unique] was the shooter and saw the two [] males with whom he had spoken earlier running across the street, away from the scene of the shooting. Khardani was inside of the pizza shop when he heard shots. Khardani looked up to see Appellant and the male he was with running from the scene and Anderson lying on the ground.

Trial Court Opinion, 10/23/15, at 3-4.

The procedural history of this case is as follows. On August 19, 2013, the Commonwealth charged Appellant via criminal information with first-degree murder[1] and conspiracy to commit first degree murder.[2] On February 20, 2015, Appellant was found guilty of both charges and immediately sentenced to an aggregate term of life imprisonment without the possibility of parole. On March 2, 2015, Appellant filed a post-sentence motion. That motion was denied via operation of law on June 30, 2015. This timely appeal followed.[3]

Appellant presents two issues for our review:

1. W[as] the evidence [] sufficient to sustain a conviction for conspiracy[?]

2. W[as] the evidence sufficient to sustain a conviction for first[-]degree murder where there was no evidence of specific intent[?]

Appellant's Brief at 4 (excess capitalization omitted).

Both of Appellant's issues challenge the sufficiency of the evidence. "Whether sufficient evidence exists to support the verdict is a question of

---

[1] 18 Pa.C.S.A. § 2502(a).

[2] 18 Pa.C.S.A. §§ 903, 2502.

[3] On July 30, 2015, the trial court ordered Appellant to file a concise statement of errors complained of on appeal ("concise statement"). *See* Pa.R.A.P. 1925(b). On September 4, 2015, Appellant filed his concise statement. On October 23, 2015, the trial court issued its Rule 1925(a) opinion.

The Commonwealth argues that Appellant waived his first issue on appeal by failing to include it in his concise statement. Although Appellant's concise statement is not a model of clarity, we decline to find waiver on this basis.

law; our standard of review is *de novo* and our scope of review is plenary." ***Commonwealth v. Walls***, 144 A.3d 926, 931 (Pa. Super. 2016) (citation omitted). "In assessing Appellant's sufficiency challenge, we must determine whether, viewing the evidence in the light most favorable to the Commonwealth as verdict winner, together with all reasonable inferences therefrom, the trier of fact could have found that the Commonwealth proved [each] element of the crime beyond a reasonable doubt." ***Commonwealth v. Ansell***, 143 A.3d 944, 949 (Pa. Super. 2016) (citation omitted). "The evidence need not preclude every possibility of innocence and the fact-finder is free to believe all, part, or none of the evidence presented." ***Commonwealth v. Ford***, 141 A.3d 547, 552 (Pa. Super. 2016) (citation omitted).

In his first issue, Appellant argues that there was insufficient evidence to convict him of conspiracy to commit murder. In order to convict a defendant of conspiracy to commit an offense, "the Commonwealth must establish the defendant: 1) entered into an agreement to commit or aid in an unlawful act with another person or persons; 2) with a shared criminal intent; and 3) an overt act was done in furtherance of the conspiracy." ***Commonwealth v. Dantzler***, 135 A.3d 1109, 1114 (Pa. Super. 2016) (*en banc*) (internal quotation marks and citation omitted). "[A] conspiracy may be inferred where it is demonstrated that the relation, conduct, or circumstances of the parties, and the overt acts of the co-conspirators

- 4 -

sufficiently prove the formation of a criminal confederation." *Commonwealth. v. Orie Melvin*, 103 A.3d 1, 43 (Pa. Super. 2014) (citation omitted).

Appellant argues that the Commonwealth failed to prove the first element of conspiracy, *i.e.*, that he entered into an agreement with Unique to commit murder. There was, however, overwhelming evidence that Appellant and Unique entered into an agreement to murder Anderson. "[A]cting together before, during, and after an attack on another individual suffices to show a unity of criminal purpose for purposes of sustaining a conviction for criminal conspiracy[.]" *Commonwealth v. Thomas*, 65 A.3d 939, 945 (Pa. Super. 2013) (citation omitted). As noted above, Appellant told Unique that Anderson "had to go." Unique only knew of Anderson's location because Appellant relayed the information Anderson supplied during their telephone conversation. Appellant and Unique then proceeded to Anderson's residence. Appellant was fully aware that Unique was armed at the time. They then asked Hines if Anderson were home. Once Anderson came to the door, Unique shot Anderson and then fled the scene with Appellant. These circumstances establish beyond a reasonable doubt that Appellant and Unique formed an agreement to murder Anderson.

Appellant argues that he went to Anderson's residence to peacefully resolve the dispute regarding Appellant's girlfriend and that he was unaware of any plan to murder Anderson. In support of this argument, he cites

Unique's trial testimony. The jury, however, found this testimony not credible. "It is not for this Court to overturn the credibility determinations of the fact-finder." *Commonwealth v. Blackham*, 909 A.2d 315, 320 (Pa. Super. 2006), *appeal denied*, 919 A.2d 954 (Pa. 2007) (citation omitted). Instead, the jury inferred that Appellant and Unique entered into an agreement to murder Anderson. This inference was supported by the record and, therefore, there was sufficient evidence to convict Appellant of conspiracy to commit murder.

In his second issue, Appellant argues that the evidence was insufficient to find him guilty of first-degree murder. In order to convict a defendant of first-degree murder, "the Commonwealth must [] demonstrate[] that[ ] a human being was unlawfully killed, the defendant perpetrated the killing, and the defendant acted with malice and a specific intent to kill." *Commonwealth v. Ovalles*, 144 A.3d 957, 969 (Pa. Super. 2016) (internal quotation marks and citation omitted). Moreover, a "defendant may be liable for the overt acts committed in furtherance of [a] conspiracy regardless of which co-conspirator committed the act." *Commonwealth v. Yong*, 120 A.3d 299, 312 (Pa. Super. 2015), *appeal granted on other grounds*, 137 A.3d 573 (Pa. 2016) (citation omitted).

Appellant argues that the Commonwealth failed to prove the requisite specific intent to kill. "The Commonwealth may establish the *mens rea* required for first-degree murder, specific intent to kill, solely from

circumstantial evidence." ***Commonwealth v. Tucker***, 143 A.3d 955, 964 (Pa. Super. 2016) (citation omitted). Appellant focuses on case law addressing shooting an individual in a vital part of the body to prove specific intent to kill. This ignores, however, the fact that the jury could have drawn an inference of "a specific intent to kill . . . from the manner in which the homicide was committed, such as, multiple gunshot wounds." ***Commonwealth v. Hughes***, 865 A.2d 761, 793 (Pa. 2004). As noted above, Anderson suffered five gunshot wounds. Together with the evidence that Appellant told Unique that "Anderson has to go," the evidence was sufficient for the jury to infer that Appellant possessed the requisite specific intent to kill.

Appellant also argues that Unique's testimony at trial established that the shooting was in self-defense and therefore Appellant lacked the specific intent to kill. "The evidence does not need to disprove every possibility of innocence, and doubts as to guilt, the credibility of witnesses, and the weight of the evidence are for the fact-finder to decide." ***Commonwealth v. Forrey***, 108 A.3d 895, 897 (Pa. Super. 2015) (citation omitted). In this case, the jury did not credit Unique's self-defense testimony. Instead, the jury determined that the multiple gunshot wounds suffered by Anderson evidenced a specific intent to kill. Again, "[i]t is not for this Court to overturn the credibility determinations of the fact-finder." ***Blackham***, 909 A.2d at 320 (citation omitted). Accordingly, both of Appellant's

sufficiency challenges are without merit and we affirm the judgment of sentence.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 11/10/2016