J-S02038-22

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| RICHARD ABBAZIO | : | |
| | : | |
| Appellant | : | No. 848 EDA 2021 |

Appeal from the Judgment of Sentence Entered April 9, 2021
In the Court of Common Pleas of Monroe County Criminal Division at
No(s):  CP-45-SA-0000234-2019

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| RICHARD ABBAZIO | : | |
| | : | |
| Appellant | : | No. 849 EDA 2021 |

Appeal from the Judgment of Sentence Entered April 9, 2021
In the Court of Common Pleas of Monroe County Criminal Division at
No(s):  CP-45-SA-0000235-2019

BEFORE:  OLSON, J., KING, J., and McCAFFERY, J.

MEMORANDUM BY McCAFFERY, J.:              **FILED MARCH 03, 2022**

In these consolidated appeals,[1] Richard Abbazio (Appellant) appeals

from the judgments of sentence imposed in the Monroe County Court of

Common Pleas, following his trial *de novo* and conviction of two summary

offenses, careless driving resulting in an unintentional death and failure to

---

[1] This Court consolidated these related appeals *sua sponte*.  **See** Order,
6/21/21.

yield while turning left.[2]  On appeal, Appellant argues he should not have been convicted of careless driving pursuant to Section 3714(b) — a violation which results in an unintentional death — because he was not charged with careless driving under subsection (a), and, in any event, the evidence was insufficient to support his conviction.  For the reasons below, we affirm.

Appellant's summary convictions stem from a motor vehicle accident that occurred on May 31, 2019, at approximately 7:00 p.m., at the intersection of Silver Spring Boulevard and Borger Road in Eldred Township, Monroe County, Pennsylvania.  *See* N.T., 4/9/21, at 6.  Pennsylvania State Trooper Peter Krajnak responded to the accident.  His testimony at Appellant's April 9, 2021, *de novo* trial revealed the following.  Appellant was driving a white Infiniti SUV traveling southbound on Silver Spring Boulevard and looking for Borger Road.  *See id.* at 8-9.  "It was daylight, it was clear, [and] there were no adverse conditions at the time[.]"  *Id.* at 7.  Because he was unfamiliar with the area, Appellant was using the GPS on his cell phone.  *Id.* at 9.  As he was making a left turn from Silver Spring Boulevard onto Borger Road, he noticed a motorcycle traveling northbound on Silver Spring Boulevard at "the last second."  *Id.*  Although he attempted to accelerate to avoid the collision, he was unable to and "felt the impact of the vehicle."  *Id.*

_____

[2] 75 Pa.C.S. §§ 3714(b) and 3322, respectively.  Appellant was convicted of violating Section 3714(b) at trial docket 234 SA 2019, and violating Section 3322 at trial docket 235 SA 2019.  His appeals are listed at 848 EDA 2021 and 849 EDA 2021, respectively.

Appellant estimated he was "traveling approximately 35 miles per hour when he attempted to make the left turn." *Id.* The operator of the white Kawasaki motorcycle, Jeremy Schessler, died at the scene. *Id.* at 8.

Trooper Krajnak issued Appellant two traffic citations: (1) operating a vehicle in careless disregard unintentionally causing a death, and (2) failing to yield to oncoming traffic when making a left turn. *See* Traffic Citations, 6/13/19. On November 26, 2019, Appellant was convicted of both summary offenses by a magisterial district judge. He filed two timely appeals, one at each docket, seeking a trial *de novo* in the Monroe County Court of Common Pleas.

The trial *de novo* was conducted on April 9, 2021. The Commonwealth presented three witnesses in its case-in-chief. First, Trooper Krajnak testified regarding his initial investigation and Appellant's statements to him at the scene — Appellant told the trooper (1) he was unfamiliar with the area, (2) he was using the GPS on his cell phone, (3) he did not "see the motorcycle when he initially turned[,]" (4) he was traveling approximately 35 miles per hour when he made the turn, and (5) he did not "stop at the intersection" before making the turn. *See* N.T. at 9, 40. Upon his investigation, the trooper believed speed was **not** a factor, "[o]n either side," in causing the accident. *Id.* at 20-21 (emphasis added). He also determined that Schessler was not licensed to drive a motorcycle and was not wearing a helmet at the time of the accident. *Id.* at 24, 29. Although there were headphones and a cell phone

- 3 -

found on the scene, Trooper Krajnak could not determine whether Schessler was listening to music while operating the motorcycle. *Id.* at 29-30.

Next, eyewitness Shirley Vogel testified that she was driving her vehicle behind Appellant's SUV at the time of the accident. N.T. at 47. According to Vogel, Appellant was stopped at the intersection of Borger Road for "one or two minutes" before making the left turn. *Id.* at 49. He had his blinker light on. *Id.* at 50. She described the scene, moments before the crash, as follows:

> I was behind [Appellant's] vehicle. Waiting for him to turn and we sat there for a little while and all [of a] sudden this motorcycle came up the hill. I could see [the motorcyclist]. I could see him over [Appellant's] vehicle and [Appellant] all [of a] sudden dashed across the road and turned.

*Id.* at 47. Vogel testified that the motorcycle "hit the back" of Appellant's vehicle, and its operator "flew in the air . . . like a rag doll." *Id.* She stated that Appellant "got out of his [vehicle] with his phone in his hand." *Id.* When asked if the motorcyclist had any time to react to Appellant's turn, she replied, "I don't think so, no." *Id.* at 48. Under cross-examination, Vogel acknowledged she did not actually see the motorcycle or Schessler hit Appellant's SUV. *Id.* at 54-55.

The Commonwealth's final witness was Pennsylvania State Trooper Jennifer Wieboldt, who testified as an expert in the field of accident reconstruction. *See* N.T. at 61. Following her investigation, Trooper Wieboldt determined that, "more likely than not, [Schessler] decided to dump his motorcycle prior to the collision." *Id.* at 68. She concluded that the cause of the accident was Appellant's improper left turn and his "fail[ure] to yield to"

Schessler.  *Id.* at 70.  Trooper Wieboldt also testified she did not believe Schessler's body flew through the air because she agreed that he "laid the bike down" prior to impact.  *Id.* at 85-86.

Appellant did not testify at trial, and presented one witness —William Camlin, an expert in accident reconstruction.  *See* N.T. at 100.  Camlin opined that the cause of the accident was "not just one item in itself[, but] several different things."  *Id.* at 112.  Although he acknowledged that "[p]art of the collision was obviously [Appellant] making a left turn[,]" Camlin emphasized the "second part" was Schessler's failure to properly respond when he could see the intersection from a distance of 500 feet away.[3]  *Id.* at 112-13.  He described what he believed occurred as follows:

> [Appellant was] approaching the intersection, slows down, and attempts to turn left, did not see Mr. Schessler approaching.  As he starts into the turn, obviously at this point Mr. Schessler is approaching.  Mr. Schessler in my opinion reacted to that by dumping the motorcycle on the ground and not attempting to break, not attempting to swerve.  Those were two options available to him prior to this.  If he had attempted to swerve he would have only had to move four to five feet to completely avoid that vehicle turning in front of him.  That would have given him an additional five feet in the northbound lane to travel in without impacting that vehicle and he could have done that easily within the time and distance he had. . . .
>
> *       *       *
>
> I believe that Mr. Schessler, one way or another ejected from the motorcycle.  Whether he was self-ejected and jumped off or whether he just fell off of whatever, and that was in fact Mr.

---

[3] Camlin estimated that Appellant's "line of sight would have stopped at the hillcrest which is about 250 feet north of the intersection."  N.T. at 105.

Schessler that impacted the [SUV] because it was so close to the edge of the road. . . .

*Id.* at 118-20. Camlin further opined that Schessler's action in laying the motorcycle down was "an incorrect evasive maneuver." *Id.* at 131. Following Camlin's testimony, the Commonwealth recalled Trooper Wieboldt to respond to Camlin's conclusions. *See* N.T., 4/9/21, at 134-57. She opined, *inter alia*, that if Schessler had swerved to avoid Appellant's car he would have most likely hit Vogel's vehicle, which was right behind Appellant's. *Id.* at 148-49. She noted, too, that if Appellant, himself, had "waited 1.5 seconds more before making his turn, the collision would not have happened[.]" *Id.* at 150.

At the conclusion of the trial *de novo*, prior to announcing its verdict, the trial court commented on the testimony presented by both parties:

> [I]t's clear to me that Mr. Schessler . . . had the right of way as he approached that intersection . . . and he ended up laying his motorcycle down and the reason for that was because [Appellant's] vehicle was in his lane of travel and [Appellant] has an obligation to yield the right of way.
>
> And a lot of focus here has been put on Mr. Schessler, what he did or should have done, or how he was supposed to handle the situation. The fact that he didn't have a motorcycle license, the fact that he didn't wear a helmet, the fact that he may have had Bluetooth headphones in, the fact that he may not have been paying attention, but really the focus here today is not on his conduct but the conduct of [Appellant].
>
> [Appellant's] obligation was to yield the right of way to Mr. Schessler and he failed to do that and unfortunately, it resulted in an accident and the death of Mr. Schessler. Ms. Vogel testified she was . . . behind [Appellant's] vehicle — you know her testimony was somewhat believable by the same token some of it was not believable. The fact that she was sitting there for one or two minutes doesn't sound consistent with what happens [on] a country road. Things move pretty quickly in my experience. I don't think it was a high volume or high traffic area. Her

description of the accident and what happened to Mr. Schessler as he either collided with the vehicle, the motorcycle collided with the vehicle, or his body collided with [Appellant's] vehicle, is somewhat incredible; the fact that it flew up into the air.

. . . I don't think her description of it was very accurate. But clearly, she was there. Perhaps [Appellant] may have had his blinker on. But . . . even if he did that didn't relieve him of his obligation to yield the right of way. I don't know if he was distracted. I don't know if he just didn't see the motorcycle clearly. . . .

. . . And perhaps, Mr. Schessler, if he had the benefit of . . . education through [a motorcycle] course, if he had the license or at least had his permit, maybe he would have been more cautious, but again in this criminal context, I don't believe that relieves [Appellant] of his obligations at that intersection. . . .

N.T. at 169-72. The trial court then found Appellant guilty of both summary offenses and imposed a fine of $500 plus costs for the careless driving offense, and a fine of $25 plus costs for the left turn offense. Appellant filed two, timely notices of appeal, one at each trial court docket.[4] As noted **supra**, this Court consolidated the appeals for disposition.

Appellant presents the following two issues for our review:

[1] Does 75 Pa.C.S. § 3714(b) require a finding of guilt under Careless Driving provisions of 75 Pa.C.S. § 3714(a)?

[2] If [A]ppellant was on notice of the traffic offense of "Careless Driving" in that the current matter was properly before the trial court *de novo*, then can a driver be convicted of "careless driving" under an ordinary negligence standard?

Appellant's Brief at 7.

_____

[4] Appellant complied with the trial court orders to file a Pa.R.A.P. 1925(b) statement for each appeal.

Preliminarily, we note that although Appellant properly appealed his summary conviction of Section 3322 — failure to yield when turning left — he fails to address the propriety of that conviction in his brief.[5] Thus, we conclude he has waived any challenge to that conviction and, accordingly, affirm the judgment of sentence at 849 EDA 2021. *See* Pa.R.A.P. 2119(a) (argument of each issue in brief must include "such discussion and citation of authorities as are deemed pertinent"); ***Commonwealth v. Jones***, 815 A.2d 598, 604 n.3 (Pa. 2002) (appellant's failure to pursue claim in "the body of his brief" waived claim for appellate review).

In his first issue, Appellant asserts that, because the Commonwealth failed to charge him with careless driving under Section 3714**(a)** "at the magisterial court, or by amendment, prior to [the] trial *de novo* in the Court of Common Pleas," the trial court could not convict him of violating Section 3714**(b)**. Appellant's Brief at 8. He insists that the question of whether he was guilty of "careless driving" under subsection (a) "was never before the summary court for disposition." *Id.* at 9. Moreover, Appellant notes that Pa.R.Crim.P. 403 requires every criminal citation include "the **specific section and subsection** of the statute or ordinance allegedly violated, together with a summary of the facts sufficient to advise the defendant of the

---

[5] In fact, Appellant's only reference to his Section 3322 conviction is his claim that "his conviction for improper left-hand turn must involve something more than ordinary negligence to establish a conviction for careless driving." Appellant's Brief at 13.

nature of the offense charged[.]" ***Id.*** at 10, *citing* Pa.R.Crim.P. 403(A)(6) (emphasis added). He concludes that his conviction for careless driving resulting in an unintentional death must, therefore, be dismissed. ***Id.*** at 12-13.

Section 3714 of Pennsylvania's Vehicle Code defines the summary traffic offense of careless driving, in relevant part, as follows:

> **(a) General rule.**—Any person who drives a vehicle in careless disregard for the safety of persons or property is guilty of careless driving, a summary offense.
>
> **(b) Unintentional death.**—If the person who violates this section unintentionally causes the death of another person as a result of the violation, the person shall, upon conviction, be sentenced to pay a fine of $500.

75 Pa.C.S. § 3714(a)-(b).

Appellant correctly notes that the traffic citation issued to him in the present case cited only a violation of Section 3714**(b)**. ***See*** Traffic Citation, 6/13/19. The same is true for the Order entered by the trial court finding Appellant guilty after the trial *de novo*. ***See*** Order, 4/9/21. Nevertheless, Appellant is entitled to no relief.

First, we agree with the Commonwealth that Appellant's challenge to a purported defect in his charging documents is waived for failure to raise it before the trial court. ***See*** Commonwealth's Brief at 8-9. Pennsylvania Rule of Criminal Procedure 109 provides:

> A defendant shall not be discharged nor shall a case be dismissed because of a defect in the form or content of a complaint, citation, summons, or warrant, . . . unless the defendant raises the defect before the conclusion of the trial in a summary case or before the

conclusion of the preliminary hearing in a court case, and the
defect is prejudicial to the rights of the defendant.

Pa.R.Crim.P. 109. Indeed, after being convicted of Section 3714**(b)** by the
magisterial district court, Appellant failed to challenge the propriety of that
charge at any time before or during the trial *de novo*. Thus, his objection on
appeal is waived.

Moreover, the record reveals Appellant was clearly on notice that he was
defending against the offense of **careless driving**. Trial counsel's closing
argument focused on Appellant's *mens rea* at the time of the accident — or as
counsel asserted, Appellant's lack thereof. **See** N.T. at 161-66. This Court's
decision in **Commonwealth v. Ford**, 141 A.3d 547 (Pa. 2016), is instructive.

In **Ford**, the defendant was convicted of, *inter alia*, failure to stop at a
**stop sign** pursuant to 75 Pa.C.S. § 3323**(b)**. **Ford**, 141 A.3d at 550.
However, the criminal information filed by the Commonwealth charged the
defendant with failure to stop at a **yield sign**, a violation of Section 3323**(c)**.
**Id.** at 553. Because "no yield sign existed on [the defendant's] road of travel,"
and all of the evidence and testimony referred to his failure to stop at a stop
sign, the defendant argued that the evidence was insufficient to support his
conviction. **Id.**

On appeal, this Court concluded that although the defendant framed his
issue as a challenge to the sufficiency of the evidence, his argument "relate[d]
to a defect in the criminal information." **Ford**, 141 A.3d at 554. Because the
defendant failed to raise that defect in the trial court, the panel concluded the
issue was waived on appeal. **Id.** at 554-55. Nevertheless, the **Ford** Court

noted that "[e]ven if not waived, the defect with the criminal information, standing alone, does not warrant relief." *Id.* at 555. The Court explained that pursuant to Pa.R.Crim.P. 560, an "omission of or error in" the citation of the crime contained in a criminal information does "not affect the validity or sufficiency of the information." *Id.*, *citing* Pa.R.Crim.P. 560(C). Relying on case law concerning the amendment of criminal informations, the *Ford* panel opined:

> Here, it is beyond cavil that [the defendant] knew of the facts surrounding the failure to stop offense. The only material difference in the elements of the offenses is the distinction between a stop sign and a yield sign. Had [the defendant] raised the issue, the Commonwealth could have amended the information because it would not have alleged a different set of events or resulted in [the defendant] having to advance a materially different defense. . . .
>
> [T]he charge of failing to stop at a stop sign did not add any new facts that [the defendant] did not know and the entire factual scenario was developed at his preliminary hearing. As discussed, [he] defended against a failure to stop offense and therefore neither his defense strategy nor his trial preparation was implicated. Accordingly, [the defendant] suffered no prejudice and is not entitled to relief.

*Id.* at 555-56 (citations omitted).

Although the present appeal involves a traffic citation and summary trial *de novo*, as opposed to a criminal information, we conclude the analysis is the same. Appellant was on notice he was defending a careless driving charge. Had he raised the issue below, the Commonwealth could have amended the citation to charge him with a violation of Section 3714(a) **and** (b). Nevertheless, the facts would remain the same. Indeed, in his closing

remarks, the Commonwealth's attorney argued that Appellant "acted **carelessly**, unintentionally causing the death [of] another individual." N.T. at 166 (emphasis added). As in **Ford**, we conclude Appellant suffered no prejudice as a result of the omission of reference to Section 3714(a) in his traffic citation. Thus, his first claim fails.

Next, Appellant argues that even if we conclude the "act of careless driving was properly before the court for adjudication[,]" the evidence presented at trial was insufficient to establish he acted "in a 'careless disregard.'" Appellant's Brief at 13-14. He insists the "only evidence" that would support such a finding was the testimony of Vogel, who claims Appellant "waited one to two minutes before suddenly turning left in the path of" Schessler. **Id.** at 14. However, Appellant notes that the trial court, as fact finder, "was not persuaded by this portion of Vogel's testimony." **Id.** He cites the court's comments, at the conclusion of the trial *de novo*, that Vogel's testimony was "somewhat believable," "not believable," and "somewhat incredible." **Id.** at 15, citing N.T. at 170-71. Appellant insists that the trial court found him guilty of careless driving based solely on the fact that he made an improper left turn. **Id.** at 19. However, he argues "careless driving is not a strict liability offense and that something more than ordinary negligence must be established to find him criminally liable." **Id.** at 18-19. Because his improper left turn established only ordinary negligence, Appellant maintains the trial court "improperly applied the law in finding him guilty of careless driving." **Id.** at 19.

Our review of a challenge to the sufficiency of the evidence is well-settled:

> We view that evidence in a light most favorable to the Commonwealth, drawing all reasonable inferences in favor of the Commonwealth. The evidence need not preclude every possibility of innocence and the fact-finder is free to believe all, part, or none of the evidence presented. Only where the evidence is so weak and inconclusive that, as a matter of law, no probability of fact can be drawn from the combined circumstances[,] is a defendant entitled to relief. We do not re-weigh the evidence and substitute our judgment for that of the fact-finder. As the question of the sufficiency of the evidence is one of law, we consider the evidence *de novo*.

**Ford**, 141 A.3d at 552-53 (citations and internal quotation marks omitted).

In order to secure a conviction for careless driving, the Commonwealth must establish the defendant drove a vehicle "in careless disregard for the safely of persons or property[.]" 75 Pa.C.S. § 3714(a). "The *mens rea* requirement applicable to § 3714, careless disregard, implies less than willful or wanton conduct but more than ordinary negligence or the mere absence of care under the circumstances." **Commonwealth v. Sanders**, 259 A.3d 524, 529 (Pa. Super. 2021) (*en banc*), *citing* **Commonwealth v. Gezovich**, 7 A.3d 300, 301 (Pa. Super. 2010). Pursuant to subsection (b) of the statute, "[i]f the person who violates this section unintentionally causes the death of another person as a result of the violation, the person shall, upon conviction, be sentenced to pay a fine of $500." 75 Pa.C.S. § 3714(b).

Here, Appellant does not contest the fact that Schessler died as a result of the accident. Rather, he maintains "there was insufficient evidence that

[he] acted in careless disregard, or that his conduct was more than ordinary negligence." Appellant's Brief at 19. We disagree. As the trial court points out in its opinion, Trooper Krajnak testified that, at the scene of the accident, Appellant told him he was "looking for Borger Road [and] was using his GPS on his cell phone because he was unfamiliar with the area." Trial Ct. Op., 5/28/21, at 2 (unpaginated); **see** N.T. at 9.[6] Appellant also told the trooper he did not see the motorcycle until the last minute, despite the fact that Trooper Krajnak determined that neither Appellant nor Schessler were speeding. Trial Ct. Op. at 2.

Furthermore, Vogel testified that she observed the motorcycle approaching the intersection **before** Appellant initiated the left turn. N.T. at 47. Although the trial court found some of her testimony unbelievable — *i.e.*, that Appellant stopped for one to two minutes before making the left turn, and that Schessler's body "flew up into the air" upon impact — the court also concluded that her testimony was "somewhat believable." N.T. at 170-71. Moreover, accepting Appellant's statement to Trooper Krajnak as true — that he did not stop before making the left turn at 35 miles per hour[7] — we

_____

[6] We note the trial court initially concluded that Appellant's claims were waived because he did "not set forth citation to any case law in support of his arguments" in his Pa.R.A.P. 1925(b) statement. Trial Ct. Op. at 1. However, Rule 1925 requires only that an appellant "concisely identify each error" they intend to raise, and precludes the trial court from **requiring** "citation to authorities or the record[.]" Pa.R.A.P. 1925(b)(4)(ii). Thus, Appellant had no obligation to cite relevant authority in his Rule 1925(b) statement.

[7] **See** N.T. at 9.

conclude that provides further support for the court's determination that he drove with careless disregard for the safety of others. Indeed, Appellant's own expert testified that during his investigation, the left turn "started to become uncomfortable" when he was traveling at a speed of only 15 miles per hour — 20 miles per hour slower than the speed Appellant reported. *Id.* at 125. Considering the fact that neither Appellant nor Schessler was speeding, and at the time of the accident, "[i]t was daylight, it was clear, [and] there were no adverse conditions[,]" we conclude the Commonwealth presented sufficient evidence to establish Appellant acted in careless disregard for the safety of Schessler when he initiated a left turn as the motorcyclist approached, without sufficient time to avoid the collision. Viewing the evidence in the light most favorable to the Commonwealth, as verdict winner, we conclude the evidence established "more than ordinary negligence or the mere absence of care[.]" *See Ford*, 141 A.3d at 552; *Sanders*, 259 A.3d at 529. Accordingly, Appellant's second claim fails.[8]

Thus, we affirm the judgments of sentence imposed at both dockets.

Judgments of sentence affirmed.

_____

[8] We note that in its Pa.R.A.P. 1925(a) opinion, the trial court concluded that Appellant's claims were waived because he did "not set forth citation to any case law in support of his arguments." Trial Ct. Op. at 1.

- 15 -

*Judgment Entered.*

*Joseph D. Seletyn, Esq.*
*Prothonotary*

*Date:* *3/3/2022*