J-A05044-21

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

COMMONWEALTH OF PENNSYLVANIA : IN THE SUPERIOR COURT OF
                                                   : PENNSYLVANIA
                                                   :
               v.                                  :
                                                   :
ZAKEE PETERSON                       :
                                                     :
                 Appellant               : No. 931 EDA 2019

Appeal from the Judgment of Sentence Entered November 9, 2018
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s): CP-51-CR-0009181-2017

BEFORE: OLSON, J., NICHOLS, J., and STEVENS, P.J.E.[*]

MEMORANDUM BY STEVENS, P.J.E.:                    Filed: March 18, 2021

Appellant Zakee Peterson appeals from the judgment of sentence of life

in prison entered in the Court of Common Pleas of Philadelphia County on

November 9, 2018, after a jury convicted him of one count each of Second

Degree Murder, Carrying a firearm on the streets of Philadelphia and

Possessing an Instrument of Crime ("PIC"). Following a careful review, we

affirm.[1]

The trial court aptly set forth the factual and procedural background

herein as follows:

> At trial, the Commonwealth presented the testimony of
> Philadelphia police officers Christopher Reed and Jonathan Switaj,
> Philadelphia police detectives Thorsten Lucke, James Dunlap,
> James Burke, and Timothy Bass, Leticia Buchanan of the

---

[*] Former Justice specially assigned to the Superior Court.
[1] 18 Pa.C.S.A. § 2502(b), 18 Pa.C.S.A. § 6108, and 18 Pa.C.S.A. § 907,
respectively.

Philadelphia police department's Firearms Identification Unit, Philadelphia assistant medical examiner Dr. Khalil Wardack, co-defendant Raekwon Moore,[1] Brittany Square, and Jeremy McKnight. [Appellant] presented no witnesses. Viewed in the light most favorable to the Commonwealth as the verdict winner, the evidence established the following.

On the afternoon of December 10, 2015, Raekwon Moore called his girlfriend, Brittany Square, and asked her to pick him up at the Checkers restaurant on Broad and Butler Streets in Philadelphia so that they could go to a mosque on Germantown Avenue and get a marriage certificate. N.T. 11/7/2018 at 35-36, 38-39, 80-81. While Moore was waiting for Square, [Appellant][2] arrived at the Checkers and asked Moore if he would give him a ride to get marijuana. N.T. 11/7/2018 at 81-84. The men agreed that they would go to Alvin Williams,[3] the decedent, to get the marijuana. N.T. 11/7/2018 at 84.

When Square arrived at the Checkers in her gold Ford Taurus, Moore and [Appellant] got into the car. N.T. 11/7/2018 at 36, 39-40, 85-86. Moore then informed Square that, before going to the mosque, they were going to make a stop so [Appellant] could get some marijuana. N.T. 11/7/2018 at 36, 40-41. Moore gave Square directions and they drove to Williams' residence that he also used as a barbershop at 3852 Germantown Avenue. N.T. 11/7/2018 at 42-43, 90, 152, 154. When [Appellant], Square, and Moore approached the barbershop, Square parked her car around the corner on 15th Street. N.T. 11/7/2018 at 43, 90. [Appellant] then exited the car alone and told Moore that he had a gun. N.T. 11/7/2018 at 43-44, 90, 107-08. [Appellant] then walked to the barbershop and knocked on the door. N.T. 11/7/2018 at 155. When Williams opened the door, he asked [Appellant] "what's up?" N.T. 11/7/2018 at 157-58. [Appellant] and Williams thereafter got into a scuffle. N.T. 11/7/2018 at 156-57. Both men lost their balance, and [Appellant] pointed his gun at Williams' midsection. N.T. 11/7/2018 at 157. As [Appellant] pointed his gun at Williams, Williams said "no, stop." N.T. 11/7/2018 at 157-58. [Appellant] then shot Williams twice in the chest. N.T. 11/7/2018 at 138, 158-59.

Jeremy McKnight, who was getting his hair cut at Williams' barbershop, witnessed the shooting and immediately ran out another door of the barbershop and down 15th Street. N.T. 11/7/2018 at 160. [Appellant] followed McKnight, while still holding his gun. N.T. 11/7/2018 at 92-93, 160. Eventually, McKnight turned down another street and [Appellant] continued running down 15th Street. N.T. 11/7/2018 at 160.

At the time of the shooting, Square and Moore were still in Square's car on 15th Street, waiting for [Appellant]. N.T. 11/7/2018 at 43, 45, 90-91. Once they heard the sound of a gun being fired, however, they drove away from the scene. N.T. 11/7/2018 at 45-46, 91-92. [Appellant] then called Moore and asked him why he and Square left. N.T. 11/7/2018 at 50, 95-97.

Thereafter, officers arrived at the crime scene and Williams was pronounced dead. N.T. 11/7/2018 at 137; N.T. 11/8/2018 at 150-51. The medical examiner determined that the cause of death was from gunshot wounds to the chest. N.T. 11/7/2018 at 149.

Philadelphia police detectives then conducted an investigation of the murder. Officers recovered surveillance video from around the area of the shooting. N.T. 11/8/2018 at 30. On December 15, 2015, McKnight went down to the Homicide Unit, gave a statement to detectives concerning the shooting, and was shown a photo array with black-and-white photos. N.T. 11/7/2018 at 166-69. McKnight told detectives that although [Appellant] looked like the shooter, he was not quite sure and would like to see color photos. N.T. 11/7/2018 at 169-70. It was not until July 6, 2016, that detectives showed McKnight a photo array with color photos. N.T. 11/7/2018 at 171-72. McKnight then identified [Appellant] as the shooter from that array. *Id*. On June 15, 2016, after Moore was arrested on unrelated gun and drug charges, detectives brought him down to the Homicide Unit, and he gave a statement, recorded on video, implicating [Appellant] as the person who robbed and killed Williams. N.T. 11/7/2018 at 99-100. On June 30, 2016, Square also gave a statement to homicide detectives implicating [Appellant] in Williams' death. N.T. 11/7/2018 at 52. A few days after Square gave her statement, [Appellant] called her and told her that he would give her money if she did not go to court and testify against him. N.T. 11/7/2018 at 57-58.

Based on this information, police issued a warrant for [Appellant's] arrest on July 11, 2016. N.T. 11/8/2018 at 138. Officers could not locate [Appellant] and, therefore, Philadelphia's Homicide Fugitive Squad was tasked with finding him. N.T. 11/8/2018 at 138-39. After several months of unsuccessful searching, [Appellant] was arrested in Oklahoma on March 23, 2017. N.T. 11/8/2018 at 146. [Appellant] initially gave Oklahoma authorities a false name before admitting who he was. *Id*. On April 20, 2017, [Appellant] was extradited back to Pennsylvania where he was formally charged with the murder of Williams. N.T. 11/8/2018 at 147.

_____

- 3 -

¹ At Docket No. CP-51-CR-0007809-2016, Moore was charged with, inter alia, second degree murder (18 Pa.C.S. § 2502(b)), robbery (18 Pa.C.S. § 3701(a)(1)), and conspiracy to commit robbery (18 Pa.C.S. §§ 903 & 3701(a)(1)). Moore entered an open guilty plea in front of the Honorable Sandy L.V. Byrd in January of 2018 to of one count each robbery and conspiracy to commit robbery. In exchange for Moore's agreement to enter an open guilty plea to the above charges, the Commonwealth agreed to drop the second degree murder charge. At the time of defendant's trial, Moore had not yet been sentenced.

² [Appellant] was also known as "Za." N.T. 11/7/2018 at 78.

³ Williams was also known as "Al." N.T. 11/7/2018 at 84.

Trial Court Opinion, filed 6/12/19, at 1-4.

On November 13, 2018, Appellant filed his Post-Sentence Motion, and the trial court denied the motion on March 4, 2019. On March 26, 2019, Appellant filed a timely notice of appeal, and the trial court directed Appellant to file a concise statement of the matters he intended to raise on appeal pursuant to Pa.R.A.P. 1925(b) on March 27, 2019.

After obtaining an extension of time in which to file his concise statement, Appellant filed the same on May 6, 2019, wherein he asserted the following:

1.    The verdict is against the sufficiency of the evidence. The video compilation of the Commonwealth was not clear and distinct but fuzzy. The testimonies of Commonwealth witnesses, co-defendant, Raekwan Moore, his intended wife, Brittany Square and eyewitness Jeremy McKnight are suspect, since each had a motive to fabricate.

2. Detective Philip Nordo: There was a great deal of dialogue between the court and the parties about what would be admissible regarding this disgraced Homicide Detective. Ultimately, there was a stipulation between the parties. The question is what

traumatic effect Detective Nardo had on the testimony of co-defendant Raekwan Moore. Did the Detective's improper touching of co-defendant have such an effect that psychologically it caused Mr. Moore to lie to the jury about the defendant's involvement in the homicide and intended robbery of Mr. Al Williams on 12/10/2015.

**See** Appellant's Concise Statement of Matters Complained of on Appeal Pursuant to Pa.R.A.P. Rule 1925(b).

The trial court filed its Rule 1925(a) opinion on June 12, 2019. Thereafter, upon noting that the aforementioned Rule 1925(b) statement was so deficient as to preclude merit review of all appellate issues and constituted *per se* ineffective assistance of counsel, this Court remanded for appointment of new counsel and further proceedings. **See Commonwealth v. Peterson**, 931 EDA 2019 (Pa.Super. filed 5/15/20).

Following remand, trial counsel filed an application to withdraw as counsel on December 16, 2020. In a *Per Curiam* Order entered on December 22, 2020, this Court directed the trial court to appoint substitute counsel for Appellant and provide this Court's Prothonotary with written notice of the appointment within ten (10) days. The trial court entered an Order on January 14, 2021, indicating new counsel had been appointed.

In his brief, Appellant presents the following statement of the Questions Presented:

I. Did the lower court err in permitting the charge of second-degree murder to be submitted to the jury in contravention of **Commonwealth v. Weigle**, 997 A.2d 306 (Pa. 2010) and its progeny where the underlying charge of robbery had been discharged for lack of evidence at the preliminary hearing since the submission of the charge to the jury under such circumstances

permitted the Commonwealth to engage in a collateral attack of the judicial determination made at the preliminary hearing?

II. Was the evidence insufficient to prove the offense of second-degree murder since under **Commonwealth v. Weigle**, 997 A.2d 306 (Pa. 2010) and its progeny the Commonwealth was collaterally estopped from proving the element that the decedent's death occurred while [Appellant] was committing or attempting to commit a robbery by the preliminary hearing court's discharge of the offense of robbery?

Brief for Appellant at 3.

Appellant initially asserts the trial court's jury instruction on the charge of Second Degree Murder was in clear contravention of prior holdings of the Pennsylvania Supreme Court because the robbery charge filed against Appellant had been discharged at the preliminary hearing and the Commonwealth did not appeal that decision. He concludes that in light of this trial court error, he is entitled to a new trial. Brief for Appellant at 11-12.

> When reviewing a challenge to part of a jury instruction, we must review the jury charge as a whole to determine if it is fair and complete. A trial court has wide discretion in phrasing its jury instructions, and can choose its own words as long as the law is clearly, adequately, and accurately presented to the jury for its consideration. The trial court commits an abuse of discretion only when there is an inaccurate statement of the law.
>
> * * *
>
> In examining the propriety of the instructions a trial court presents to a jury, our scope of review is to determine whether the trial court committed a clear abuse of discretion or an error of law which controlled the outcome of the case. A jury charge will be deemed erroneous only if the charge as a whole is inadequate, not clear or has a tendency to mislead or confuse, rather than clarify, a material issue. A charge is considered adequate unless the jury was palpably misled by what the trial judge said or there is an omission which is tantamount to fundamental error.
>
> Consequently, the trial court has wide discretion in fashioning jury instructions. The trial court is not required to give every charge that is requested by the parties and its refusal to

- 6 -

give a requested charge does not require reversal unless the appellant was prejudiced by that refusal.

*Commonwealth v. Baker*, 963 A.2d 495, 507 (Pa.Super. 2008) (citations and internal quotation marks omitted).  In addition,

> Murder of the second degree is a criminal homicide committed while a defendant was engaged as a principal or an accomplice in the perpetration of a felony. 18 Pa.C.S.[ ] § 2502(b). 18 Pa.C.S.[ ] § 2502(d) defines perpetration of a felony as:
>> [t]he act of the defendant in engaging in or being an accomplice in the commission of, or an attempt to commit, or flight after committing, or attempting to commit robbery, rape, or deviate sexual intercourse by force or threat of force, arson, burglary or kidnapping.
> 18 Pa.C.S.[ ] § 2502(d) (emphasis added). The malice or intent to commit the underlying crime is imputed to the killing to make it second-degree murder, regardless of whether the defendant actually intended to physically harm the victim.

*Commonwealth v. Rivera*, 238 A.3d 482, 500 (Pa.Super. 2020).

"[M]alice or intent to commit the underlying felony are the requisite *mens rea* requirements for second-degree murder."  *Commonwealth v. Nevels*, 203 A.3d 229, 242 (Pa.Super. 2019), *appeal granted in part,* 216 A.3d 1042 (Pa. 2019), and *aff'd,* 235 A.3d 1101 (Pa. 2020).  "The malice or intent to commit the underlying crime is imputed to the killing to make it second-degree murder, regardless of whether the defendant actually intended to physically harm the victim." *Id*. at n. 12 (citing *Commonwealth v. Lambert*, 795 A.2d 1010 (Pa.Super. 2002)).

Herein, following our independent review of the trial transcripts and the record as a whole, we find Appellant has waived this argument for his failure

to preserve it for Appellate review. ***See*** N.T., 11/9/18, at 92-111. It is well-settled that:

> In order to preserve a jury-charge challenge for appellate review, a party must either: (1) lodge a contemporaneous objection on the record, or (2) make requested points for charge part of the record pursuant to Pa.R.C.P. 226(a), obtain an explicit trial court ruling upon the challenged instruction, and raise the issue in a post-trial motion. ***See*** Pa.R.A.P. 302(a); Pa.R.C.P. 226(a), 227, 227.1.

***Jones v. Ott***, 648 Pa. 76, 87, 191 A.3d 782, 789 (2018) (citations omitted).

In ***Commonwealth v. Hitchko***, 633 Pa. 51, 93. 123 A.3d 731, 756 (2015) the Pennsylvania Supreme Court found that an appellant had waived his challenge to a trial court's jury instruction where following the charge, the appellant failed to object to the instruction or take exception to it before the jury retired to deliberate. Instead, when the trial court asked counsel whether there were any objections to the given charge, defense counsel replied, "None, your honor."

Similarly, at no time either prior to or during the charge did Appellant herein challenge the trial court's instruction on the elements of Second Degree Murder. To the contrary, at the conclusion of its instructions, the trial court asked counsel at sidebar whether either had "any exceptions to this charge" to which both responded "No." N.T., 11/9/18, at 111. Moreover, Appellant did not raise this claim in his Post Trial Motion. Therefore, this issue is waived.

Appellant's next challenges the sufficiency of the evidence to prove Second Degree Murder. Relying upon the Pennsylvania Supreme Court's holding in ***Commonwealth v. Weigle***, 997 A.2d 306 (Pa. 2010), Appellant

posits "the preliminary hearing court's ruling constituted a final determination that insufficient evidence existed to support the charge of robbery." Brief for Appellant at 13. As such, Appellant reasons the Commonwealth was "estopped from relitigating the issue of whether a robbery occurred as a requisite element of second degree murder." *Id*. at 13-14. We disagree.

When examining a challenge to the sufficiency of evidence, this Court employs a well-settled standard of review:

> The standard we apply in reviewing the sufficiency of the evidence is whether viewing all the evidence admitted at trial in the light most favorable to the verdict winner, there is sufficient evidence to enable the fact-finder to find every element of the crime beyond a reasonable doubt. In applying [the above] test, we may not weigh the evidence and substitute our judgment for the fact-finder. In addition, we note that the facts and circumstances established by the Commonwealth need not preclude every possibility of innocence. Any doubts regarding a defendant's guilt may be resolved by the fact-finder unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances. The Commonwealth may sustain its burden of proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence. Moreover, in applying the above test, the entire record must be evaluated and all evidence actually received must be considered. Finally, the [trier] of fact while passing upon the credibility of witnesses and the weight of the evidence produced, is free to believe all, part or none of the evidence.

*Commonwealth v. Hansley*, 24 A.3d 410, 416 (Pa.Super. 2011), *appeal denied*, 613 Pa. 642, 32 A.3d 1275 (2011) (quoting *Commonwealth v. Jones*, 874 A.2d 108, 120-21 (Pa.Super. 2005)).

In *Weigle*, *supra*, the Pennsylvania Supreme Court held that the Commonwealth was precluded from reasserting robbery charges as a cognate

offense of retail theft after the robbery charges had been dismissed following preliminary hearings under Pa.R.Crim.P. 560(B)(5).[2]  Appellant maintains that in light of **Weigle** and its progeny, the Commonwealth was estopped from proving robbery, a critical element of second degree murder; therefore, the evidence necessarily was insufficient to support that charge.  **Id**. at 14.

Appellant's assertions to the contrary, the holding on **Weigle** is not dispositive of the instant matter.  Herein, the Commonwealth did not attempt to reassert the previously dismissed robbery charge against Appellant at trial.  In fact, the trial court informed the jury during its charge that Appellant had not been charged with the crime of robbery.  N.T. 11/9/18, at 103.

As stated previously, one commits Second Degree Murder when he or she kills another with the requisite malice while perpetrating an enumerated felony, including robbery, attempting to commit an enumerated felony, or fleeing after the commission of the felony.  **See** Pa.C.S.A. § 2502; **Rivera**,

---

[2] That provision reads as follows:

> B) The information shall be signed by the attorney for the Commonwealth and shall be valid and sufficient in law if it contains:
>
>                            ***
>
> (5) a plain and concise statement of the essential elements of the offense substantially the same as or cognate to the offense alleged in the complaint;

Pa. R. Crim. P. 560(B)(5).

*supra*.  *See also Commonwealth v. Knox*, 50 A.3d 732, 739 (Pa.Super. 2012).  Thus, the jury was not precluded from considering evidence that Appellant killed the victim in the course of committing a robbery.  When viewed in a light most favorable to the Commonwealth as the verdict winner, the evidence established that Appellant proceeded to Williams' barbershop, armed with a handgun, and robbed or attempted to rob him. *See* N.T., 11/7/18, at 86-88; 107-98, 113.

Specifically, Raekwon Moore testified that while on route to meet Williams, Appellant and he were speaking about the "weed" when Appellant indicated he needed money, and that he intended to "get some weed so he can make some cash."  Appellant told Moore he would give Moore some weed if he dropped Appellant off at Williams' barbershop.  *Id*. at 88.  Moore understood this to mean that Appellant intended to rob Williams, and Moore was aware that Appellant had a gun.  *Id*. at 88, 108.

While waiting for a haircut, Jeremy McKnight, a long-time client of Williams', heard a knock at Williams' door.  McKnight observed Appellant holding a gun and "scuffling" with Williams while the latter, unarmed, asked Appellant to stop.  *Id*. at 155-158.  After he witnessed Appellant fire shots into Williams' midsection, McKnight fled the barbershop, and Appellant ran after him.  *Id*. at 159-64.

Moore's then girlfriend Brittany Square was driving the vehicle in which Moore and Appellant rode en route to Williams' barbershop.  Square testified

Appellant offered to give her money if she would not testify against him. N.T., 11/7/18 at 57-58.

After the incident, Appellant fled from police who issued a warrant for his arrest in July of 2016. Appellant was not apprehended until over a year later when he was located and arrested in Oklahoma on March 23, 2017, after initially providing authorities there a false name. N.T., 11/8/18, at 138, 146.

In light of the foregoing, the fact that Appellant was not charged with Robbery does not foreclose the jury's finding that he attempted to perpetrate that felony when he killed Williams, fled the jurisdiction and sought to bribe a witness who was to testify against him. It was within the purview of the jury as the finder of fact to weigh the record evidence and pass upon the credibility of witnesses. **Hansley**, **supra**. Thus, the evidence was sufficient for the jury to find that Appellant shot and killed Williams during the course of a robbery and was, therefore, guilty of Second Degree Murder. Therefore, this issue does not entitle Appellant to relief.

Judgment of Sentence affirmed.

Judge Olson concurs in the result.

Judge Nichols concurs in the result.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: <u>3/18/21</u>